**KITTERY MOTORCYCLE, INC., Plaintiff,**

**v.**

**G. Steven ROWE, Attorney General for the State of Maine, Defendant.**

**No. Civ. 01–160–B–H.**

United States District Court, D. Maine.

May 6, 2002.

Barry A. Bachrach, Worcester, MA, Stephen B. Wade, Skelton, Taintor & Abbott, Auburn, ME, for Kittery Motorcycle, Inc., plaintiff.

Christopher C. Taub, Ass't Att'y General, Augusta, ME, for Maine Attorney General, defendant.

Michael Kaplan, Preti, Flaherty, Beliveau, Pachios & Haley, LLC, Portland, ME, for Maine Automobile Dealers Association intervenor-plaintiff.

## ORDER ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

HORNBY, Chief Judge.

This lawsuit is a constitutional challenge to state legislation that requires certain businesses to remain closed on Sundays. Over the years, such legislation has variously been called Sunday Blue Laws, Lord's Day Laws, and Sunday Closing Laws. Earlier in Maine's history, *see, e.g.,* P.L. 1821 ch. IX (Sunday closing law passed by Maine's first legislature), religious premises motivated such legislation and the prohibitions broadly encompassed both business activities and recreational activities. But over the years, with changing social mores, legislatures have allowed many exceptions, and no longer is the legislation defended or attacked on religious bases. Instead, it has come to be recognized as serving a secular purpose in contemporary society. At least since the United States Supreme Court decisions in the *McGowan* trilogy, *McGowan v. Maryland,* 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961); *Two Guys from Harrison–Allentown, Inc. v. McGinley,* 366 U.S. 582, 81 S.Ct. 1135, 6 L.Ed.2d 551 (1961); and *Gallagher v. Crown Kosher Super Market of Massachusetts, Inc.,* 366 U.S. 617, 81 S.Ct. 1122, 6 L.Ed.2d 536 (1961), the constitutional debate therefore has become whether the secular legislative policies—like preservation of family values, or recreation (ironically, one of the things originally prohibited)—can justify the particular lines the legislature has drawn between what is permitted to open for business and what is not, because inevitably someone or some business finds itself on the wrong side of the legislative line.

Here, the aggrieved business, the plaintiff, is a motorcycle retailer who would like to remain open for business on Sunday. (It is located in Kittery, just over the line from New Hampshire where competitors can remain open. Mem. in Support of Pl.'s Mot. for Summ.J. at 14.) Under Maine statutes, however, motorcycles are treated as motor vehicles, *see* 29–A M.R.S.A. § 101(38) (1996), and Maine statutes prohibit the sale of motor vehicles on Sundays. 17 M.R.S.A. § 3203 (Supp.2001). Whether or not that is good policy for automobile sales, says the motorcycle retailer, it is unfair to motorcycle retailers because motorcycles compete for the consumer's dollar not so much with automobiles, as with boats, jet skis, motor homes, all-terrain vehicles, snowmobiles, etc.—all of which can be sold in Maine on Sunday.[1]

---

1. The plaintiff also argues that 17 M.R.S.A. § 3204 (Supp.2001) permits a motorcycle retailer to sell motorcycles on Sunday, or at least creates an unconstitutionally vague and ambiguous law when read together with section 3203, because the latter says motor vehicles cannot be sold on Sunday, whereas the former says that retailers of certain sizes can be open. Mem. in Support of Pl.'s Mot. for Summ.J. at 6–8. The plaintiff is wrong and so clearly wrong on these issues that I deal with them only in passing. Section 3203 is devoted exclusively to motor vehicles and could not be clearer: all transactions by a business in new or used motor vehicles (defined elsewhere as including motorcycles) are prohibited and no one can open "any place of business or lot in which that person attempts to or does engage in the business of buying, selling, exchanging, dealing or trading in new or used motor vehicles." 17 M.R.S.A. § 3203. By contrast, section 3204 is a general prohibition on opening a business on Sunday. 17 M.R.S.A. § 3204. Over the years, more than thirty classes of businesses have been exempted; in 1963, a general exemption was created for stores with 5,000 square feet or less of retail space and, in 1983, it was amended to permit Sunday sales for Christmas shoppers by exempting the hours of noon

Mem. in Support of Pl.'s Mot. for Summ.J. at 9. The motorcycle retailer also argues that Maine's Sunday Closing law has become so riddled with exceptions over the years that in 2002 it no longer supports any legitimate governmental objective. Pl.'s Opp'n to Def.'s Mot. for Summ.J. at 3–6. I reject the challenges.

■ In lawyers' terms, this constitutional challenge is presented as an equal protection or substantive due process issue.[2] In either event, the analysis is the same: the law will survive if there is a legitimate state purpose, and the classification—the line drawn between who is covered and who is not—is rationally related to that purpose. *Montalvo–Huertas v. Rivera–Cruz*, 885 F.2d 971, 976–79 & n. 7 (1st Cir.1989). Put another way, the question for a federal judge is not whether the Legislature has acted sensibly or has promoted sound public policy, but whether it has acted so irrationally that the democratic choice must be invalidated.

The primary goals of Maine's legislation are not in dispute: preserving a day when family members are free of work and can be together, yet allowing them to spend that time recreating, and therefore allowing many services and products to be reasonably accessible, *i.e.*, through vendors open for business.[3] The plaintiff does not attack the legitimacy of those goals, but only the particular lines the legislature has drawn, because it has been treated not like a jet ski or boat seller but like a car or truck seller. *See, e.g.*, Mem. in Support of Pl.'s Mot. for Summ.J. at 11. The Supreme Court has spoken to that issue:

> Defining the class of persons subject to a regulatory requirement—much like classifying governmental beneficiaries—"inevitably requires that some persons who have an almost equally strong claim

to 5:00 p.m. on Sundays between Thanksgiving Day and Christmas Day. Me.Op. Att'y Gen. No. 90–8, 1990 WL 596834, at *1 (Nov. 26, 1990). Finally, in 1990, the citizens of Maine added new language to section 3204 by the initiation process; the citizenry created a new exemption for stores of over 5,000 square feet of selling space so long as employees were not required to work on Sunday. *Id.* at *2. Nothing in the initiated legislation suggested that it was attempting to alter section 3203's direct prohibition on motor vehicle sales. Moreover, there is no conflict between sections 3203 and 3204 to create vagueness or ambiguity. Retailers who qualify under section 3204 may open, but they may not sell motor vehicles. The record reflects that that is what the plaintiff has done in the past— keep open its place of business for the sale of other merchandise but not motorcycles. Statement of Undisputed Material Facts at 3. That is the obvious answer and it is the correct answer.

2. "No State shall ... deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

3. In interpreting Maine statutes, I have consulted the following: *Opinion of the Justices*, 159 Me. 410, 191 A.2d 637 (1963); *State v. S.S. Kresge, Inc.*, 364 A.2d 868 (Me.1976); *State v. Karmil Merchandising Corp.*, 158 Me. 450, 186 A.2d 352 (1962); and *Forest City Chevrolet/SAAB v. Maine Mall Motors*, No. CV–94–1128 (Me.Super.Ct.Cum.Cty. Mar. 10, 1995). The defendant argues that Maine's Sunday Closing law was intended to ensure motor vehicle dealership employees a day off, to reduce dealership operating costs and to maintain adequate competition (thereby lowering prices to consumers), to allow consumers to browse motor vehicle lots without interference, to prevent sales on Sunday when buyers cannot procure necessary ancillary services (insurance, financing, title check, mechanical inspection), to reduce noise and traffic congestion around motor vehicle dealerships and to prevent consumers who do not intend to purchase a vehicle from using Sunday to falsely "test drive" vehicles. Def.'s Responses to Pl.'s First Set of Interrogs. at 1– 2 (Ex. A to Bachrach Aff.). I do not intend to deal with all of these, some of which I consider implausible.

to favored treatment be placed on different sides of the line, and the fact [that] the line might have been drawn differently at some points is a matter for legislative, rather than judicial, consideration." ... [The legislative body] had to draw the line somewhere.... This necessity renders the precise coordinates of the resulting legislative judgment virtually unreviewable, since the legislature must be allowed leeway to approach a perceived problem incrementally.

*FCC v. Beach Communications, Inc.,* 508 U.S. 307, 315–16, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993) (citations omitted). Likewise,

[a] classification does not fail rational-basis review because it " 'is not made with mathematical nicety or because in practice it results in some inequality.' "

*Heller v. Doe,* 509 U.S. 312, 321, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993) (citations omitted).

 That is what has occurred here. This motorcycle retailer makes a persuasive case that motorcycles are more like recreational equipment in their appeal to the consumer's discretionary dollar than they are like cars or trucks where consumers require transportation. But the legislature's decision to treat them like cars and trucks cannot be said to be irrational.[4] Probably it would have been fairer to treat motorcycles like boats, jet skis or snowmobiles, but the decision to lump motorcycles together with cars and trucks is not wholly indefensible.

The plaintiff makes a more compelling case in arguing that in 2002 the Sunday Closing law has become so full of excep-

tions that it cannot any longer be defended as supporting a day of rest or recreation for Maine's citizens. Pl.'s Opp'n to Def.'s Mot. for Summ.J. at 3–6. The plaintiff points to the lengthy list of explicitly excepted businesses in section 3204; the broad exemption for stores of 5,000 square feet or less; and the 1990 exemption for all larger stores (as long as they do not require their employees to work on Sunday). *Id.* at 4–5. The plaintiff argues that the Sunday closing law has become so "gutted" by these exceptions that the State can no longer "argue that keeping motorcycle dealerships closed on Sundays promotes Sundays [sic] as a day of rest." *Id.* at 5.

 As best I can understand the statute, in 2002 retailers can sell every tangible item on Sundays *except* motor vehicles. The State defends this result by arguing that motor vehicle sales, including motorcycle sales, are commission driven; employees therefore will feel economically compelled to work on Sunday even if their employers do not actually compel them to do so; and they therefore need the protection of section 3203's outright prohibition. Def.'s Mot. for Summ.J. at 7–8. But the plaintiff responds that the Legislature permits real estate brokers and motor home brokers to sell on Sundays even though those are also commission-driven sales. Pl.'s Opp'n to Def.'s Mot. for Summ.J. at 5–6. I am not going to get into the technical dispute between the lawyers as to whether the record is adequate to support the common sense understanding that real estate brokers and motor home brokers operate on commission. Instead, I recognize the statutory scheme for what it is—a patchwork quilt of accommodations sewn together over the years.[5] The resulting

---

4. The decision to treat motorcycle dealers and other motor vehicle dealers together is not irrational; according to an officer of the Bureau of Motor Vehicles of the Department of the Secretary of State, of the 176 dealers

licensed to sell motorcycles as of February, 2001, 151 of them also had licenses to sell new or used automobiles. Grant Aff. at 1.

5. If I were to rule solely on the purpose reflected in the legislative history for the Sun-

list of what can be done on Sunday and by whom is not logical, but it does not have to be. As the Court said in *Heller v. Doe,* " '[t]he problems of government are practical ones and may justify, if they do not require, rough accommodations—illogical, it may be, and unscientific.' " 509 U.S. at 321, 113 S.Ct. 2637, 125 L.Ed.2d 257 (quoting *Metropolis Theater Co. v. City of Chicago,* 228 U.S. 61, 69–70, 33 S.Ct. 441, 57 L.Ed. 730 (1913)). And importantly: " 'The Constitution presumes that, absent some reason to infer antipathy, even improvident decisions will eventually be rectified by the democratic process and that judicial intervention is generally unwarranted no matter how unwisely we may

think a political branch has acted.' " *Beach Communications,* 508 U.S. at 314, 113 S.Ct. 2096 (quoting *Vance v. Bradley,* 440 U.S. 93, 97, 99 S.Ct. 939, 59 L.Ed.2d 171 (1979)). There is no reason to infer antipathy against motor vehicle (or motorcycle) dealers in the State of Maine. The statutory scheme is illogical but not unconstitutional. In fact, Maine's Sunday Closing law still has a lot of coverage beyond motor vehicles—in the service industry, for wholesalers, for manufacturers, etc. *Accord Lakeside Imports, Inc. v. Louisiana,* 639 So.2d 253 (La.1994) (rejecting a motor vehicle dealer's constitutional challenge to a Sunday Closing law that exempted virtually all commerce except motor vehicle

---

day closing of motor vehicle sales, the legitimate state purpose might be harder to defend. *Forest City Chevrolet/SAAB,* No. CV–94–1128 at 3 n. 2. The prohibition was enacted in 1959. The originating bill was sponsored by the Maine Automobile Dealers Association, 80% of whose members had voted to support closing on Sunday and 20% of whom had opposed the measure. S.Legis.Rec. at 1363 (May 5, 1959) (statement of Sen. Dow). The sponsor gave as a reason for the bill:

> It seems that better than eighty percent of the automobile dealers in the State of Maine felt that opening Sunday was a menace and a hazard to the public. For instance, in the urban areas in the City of Bangor where used car lots and new car lots are open Sundays they have a number of customers who come in and ask to try out cars. Young men, older men and others take cars out of the lots and come back and say, "We can't do business today because it is Sunday." Now these automobile dealers are good citizens and good businessmen and they as a group have asked me to sponsor this bill before the Legislature to stop that abuse.

*Id.* at 1364 (statement of Sen. Hillman). It is apparent from the legislative record in 1959 (as well as the legislative record in 2001 when legislation was unsuccessfully proposed on the plaintiff's behalf to permit sales of motorcycles, *see* House Legis. Rec. at H–489 (Apr. 25, 2001) (statement of Rep. Dorr)) that dealers are most concerned about the competitive

effects. Specifically, if dealerships can sell motor vehicles (or motorcycles in particular) and one dealer does so, the others will feel compelled to open and sell on Sunday in order to remain competitive and not lose their sales to that dealer. The vast majority would prefer to remain closed, but feel that they need the legislative protection of directing that they remain closed to avoid the dilemma just described. That is a legitimate legislative goal. *Forest City Chevrolet/SAAB,* No. CV–94–1128 at 2–5. Moreover, according to the Supreme Court, I am not limited to the legislative record:

> [A] legislature that creates these categories need not "actually articulate at any time the purpose or rationale supporting its classification." Instead, a classification "must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification."

> A State, moreover, has no obligation to produce evidence to sustain the rationality of a statutory classification. "[A] legislative choice is not subject to courtroom factfinding and may be based on rational speculation unsupported by evidence or empirical data." A statute is presumed constitutional ... and "[t]he burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it," whether or not the basis has a foundation in the record.

*Heller v. Doe,* 509 U.S. at 320–21, 113 S.Ct. 2637 (citations omitted).

sales). The current patchwork should await correction by the democratic process.

The First Circuit followed just this analysis in reviewing Puerto Rico's Sunday closing law in 1989. In *Montalvo–Huertas v. Rivera–Cruz,* the court found the Puerto Rican law "Delphic in spots," 885 F.2d at 978, and described the statute as "a checkerboard," *id.* at 981, or "more a madras than a simple, consistent pattern," *id.* at 982. The First Circuit nevertheless noted that the Supreme Court had upheld a Massachusetts closing law that it had described as an " 'unbelievable hodge podge.' " *Id.* at 979 (quoting *Gallagher,* 366 U.S. at 622, 81 S.Ct. 1122). It did not matter to the First Circuit that the law permitted perhaps 87.5% of the Puerto Rican population to work on Sunday because the only relevant statistic would be the percentage "who *in fact* work on Sundays." *Id.* at 980. More importantly, "the constitutional inquiry does not depend upon whether the Closing Law has in fact achieved its goal" but only whether the Legislature could rationally believe that it *would* promote the objective, *id.* at 981, and legislatures are permitted to act one step at a time, dealing with one phase of a field and neglecting others. *Id.* (citing *Williamson v. Lee Optical Inc.,* 348 U.S. 483, 489, 75 S.Ct. 461, 99 L.Ed. 563 (1955)).

Making motor vehicles the *only* goods that cannot be sold on Sunday is hard to defend logically or on public policy grounds, as Maine Superior Court Justice Brennan recognized in 1995. *Forest City Chevrolet/SAAB,* No. CV–94–1128 at 7. But this sort of constitutional challenge is unlike cases where federal courts are called upon to intervene to protect enumerated interests under the Bill of Rights like freedom of speech, press or religion; or to invalidate racial, ethnic or sex classifications; or to protect federal interests like Congress's power over interstate commerce. Instead, this is garden variety social and economic legislation. Therefore, it poses most starkly the question: When should a judge, on constitutional grounds, invalidate what the democratically elected representatives have done? The legislative scheme here is not pretty; it is perilously close to, but not quite, beyond the pale.

For all these reasons, the plaintiff's motion for summary judgment is DENIED and the defendant's motion for summary judgment is GRANTED.

So ORDERED.