LIPEZ, Circuit Judge.
 

 This appeal requires us to revisit the constitutional propriety of a state’s Sunday closing laws. Appellant Kittery Motorcycle, Inc. (“Kittery”) is a motorcycle dealership located in Kittery, Maine, near the New Hampshire border. Kittery claims that Maine’s Sunday closing laws, Me.Rev. Stat. Ann. tit. 17, §§ 3203-3204 (West Supp.2002), violate the United States Constitution’s guarantees of equal protection and due process because, as a result of numerous exemptions enacted over the past half century, these laws authorize the sale of everything on Sundays except motor vehicles (defined to include motorcycles under Maine law). Kittery claims that, as a consequence, it loses substantial business to dealerships in New Hampshire, a state that permits the sale of motorcycles on Sunday.
 

 
 *45
 
 While Sunday closing laws may be vestiges of a bygone era, we conclude that the laws at issue are not constitutionally infirm. Just as the district court rejected Kittery’s challenge to Maine’s Sunday closing laws, so do we.
 

 I.
 

 A. Maine’s Sunday Closing Laws
 

 Maine’s general Sunday closing law opens with the following pronouncement: “No person, firm or corporation may, on the Lord’s Day ... keep open a place of business to the public, except for works of necessity, emergency or charity.”
 
 [1]
 
 Me. Rev.Stat. Ann. tit. 17, § 3204 (West Supp. 2002). The statute is criminal in nature. First-time offenders “shall be punished by a fíne of not more than $100 or by imprisonment for 30 days, or by both.”
 
 Id.
 
 The penalties increase substantially for repeat offenders.
 
 Id.
 

 Over the years, the Maine legislature has exempted dozens of different businesses from the law’s application. As of 2002, the law exempted such diverse businesses as seasonal dairy stands, ship chan-dleries, textile plants, bowling alleys, and real estate brokers.
 
 Id.
 
 Another exemption applies to retail stores that employ no more than five persons.
 
 Id.
 
 Likewise, retail stores that have “no more than 5000 square feet of interior customer selling space” may open on Sundays.
 
 Id.
 
 Finally, a 1990 amendment carved out an exemption that practically swallowed the rule'— retail stores larger than 5000 square feet may open on Sundays provided that they do not require their employees to work that day.
 
 [2]
 

 Id.
 

 However, section 3203 is explicit in its prohibition of motor vehicle sales:
 

 Except as provided in section 3203-A,
 
 [3]
 
 any person who carries on or engages in the business of buying, selling, exchanging, dealing 'or trading in new or used motor vehicles; or who opens any place of business or lot in which that person attempts to or does engage in the business of buying, selling, exchanging, dealing or trading in new or used motor vehicles; or who does buy, sell, exchange, deal or trade in new or used motor vehicles as a business on the first day of the week, commonly known and designated as Sunday, is a disorderly person.
 

 Me.Rev.Stat. Ann. tit. 17, § 3203 (West Supp.2002). Under Maine law, a motorcycle is considered a “motor vehicle.” Me. Rev.Stat. Ann. tit. 29-A, § 101(38) (West 1996 & Supp.2002). A person convicted of violating section 3203 is subject to a fine of no more than $100, imprisonment for not more than ten days, or both. Me.Rev.Stat. Ann. tit. 17, § 3203 (West Supp.2002). As with section 3204, the penalties increase substantially for repeat offenders.
 
 See id.
 
 § 3203 (“[T]he 3rd or each subsequent offense must be punished by a fine of not more than $750 or by imprisonment for not more than 6 months, or by both.”).
 

 B. Proceedings Below
 

 Kittery filed suit in the United States District Court for the District of Maine on
 
 *46
 
 August 10, 2001, seeking a declaratory judgment that sections 3203 and 3204 are “unconstitutional to the extent they prohibit motorcycle dealers from selling motorcycles in Maine on Sundays.” In the alternative, Kittery sought a declaration that its dealership could legally operate on Sundays pursuant to the 1990 amendment to section 3204 (the exemption for retail stores larger than 5000 square feet).
 

 Following limited discovery, both sides moved for summary judgment. Kittery assailed the closing laws on a number of fronts. First, it argued that sections 3203 and 3204 violate the United States Constitution’s guarantees of equal protection and due process in that they single out motor vehicle dealerships for closure while permitting every other business to remain open on Sundays. Next Kittery argued that, assuming arguendo that the state could constitutionally proscribe Sunday motor vehicle sales, the state had no rational basis for classifying motorcycles as “motor vehicles.” Kittery maintained that motorcycles are more akin to recreational vehicles' — such as all-terrain vehicles and snowmobiles — whose sale on Sundays is not proscribed. Finally, Kittery argued that sections 3203 and 3204 are unconstitutionally vague and that the 1990 amendment to section 3204 impliedly repealed section 3203.
 

 In a thoughtful opinion, the district court expressed frustration with the seemingly “illogical” nature of the statutory scheme. Ultimately, however, the district court held that Kittery’s arguments must fail in light of the constitutional presumption that “absent some reason to infer antipathy, ... judicial intervention is generally unwarranted no matter how unwisely we may think a political branch has acted.”
 
 Kittery Motorcycle, Inc. v. Rowe,
 
 201 F.Supp.2d 189, 194 (D.Me.2002) (quoting
 
 F.C.C. v. Beach Communications, Inc.,
 
 508 U.S. 307, 314, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993)). Judgment for the defendant was entered accordingly, and this appeal ensued. “Where, as here, summary judgment has been granted, the court of appeals reviews the matter de novo, regarding the record and all reasonable inferences therefrom in the light most hospitable to the party who lost below.”
 
 Grant’s Dairy
 
 —Maine,
 
 LLC v. Comm’r of Me. Dep’t of Agric., Food & Rural Res.,
 
 232 F.3d 8, 14 (1st Cir.2000).
 

 II.
 

 A. The Equal Protection and Due Process Claims
 

 As explained above, Kittery claims that Maine’s Sunday closing laws violate constitutional guarantees of equal protection and substantive due process.
 
 [4]
 
 In making its claims, Kittery does not argue that an equal protection analysis differs in any way from a due process analysis. Indeed, the parties have, by and large, framed their arguments almost solely in terms of equal protection. Accordingly, we will analyze Kittery’s claims solely in terms of equal protection.
 
 See Minnesota v. Clover Leaf Creamery Co.,
 
 449 U.S. 456, 470 n. 20, 101 S.Ct. 715, 66 L.Ed.2d 659 (1981) (remarking that if statute does not violate equal protection, “it follows
 
 a fortiori
 
 that [it] does not violate the Fourteenth Amendment’s Due Process Clause”);
 
 Montalvo-Huertas v. Rivera-Cruz,
 
 885 F.2d 971, 976 n. 7 (1st Cir.1989) (noting that “the type and kind of scrutiny applied, and the result, would be no different on either theory”).
 

 
 *47
 
 The Supreme Court has developed a tripartite rubric for evaluating equal protection challenges to legislation. When a statute burdens certain “fundamental rights”—e.g., voting rights or the right to interstate travel—a reviewing court will strictly scrutinize that statute, upholding it only if the government can clearly demonstrate a compelling interest incapable of being served by less intrusive means.
 
 See, e.g., Atty. Gen. of N.Y. v. Soto-Lopez,
 
 476 U.S. 898, 906, 106 S.Ct. 2317, 90 L.Ed.2d 899 (1986) (right to interstate travel);
 
 Storer v. Brown,
 
 415 U.S. 724, 756, 94 S.Ct. 1274, 39 L.Ed.2d 714 (1974) (Brennan, J., dissenting) (voting rights). Likewise, a reviewing court will apply strict scrutiny if a legislative distinction is based on a “suspect” classification such as race or national origin.
 
 See, e.g., Shaw v. Reno,
 
 509 U.S. 630, 643-45, 113 S.Ct. 2816, 125 L.Ed.2d 511 (1993) (racial classifications). By the same token, the Supreme Court has identified other classifications, such as illegitimacy, which are less “suspect” and thus subject to a less exacting level of scrutiny, often characterized as “intermediate” scrutiny. In such cases, the government must demonstrate at a minimum that the challenged classification is “substantially related to an important government objective.”
 
 Clark v. Jeter,
 
 486 U.S. 456, 461, 108 S.Ct. 1910, 100 L.Ed.2d 465 (1988).
 

 All other regulations, including the statute under review in this case, are subject to the third and least exacting tier of scrutiny—rational basis: “Social and economic legislation ... that does not employ suspect classifications or impinge on fundamental rights must be upheld ... when the legislative means are rationally related to a legitimate government purpose.”
 
 Hodel v. Indiana,
 
 452 U.S. 314, 331, 101 S.Ct. 2376, 69 L.Ed.2d 40 (1981). The parties do not dispute that Kittery’s equal protection challenge to Maine’s Sunday closing laws entails this lowest level of scrutiny. Kittery maintains, however, that even under this rational basis test, Maine’s Sunday closing laws are unconstitutional as applied to automobile and motorcycle dealerships.
 

 Kittery faces an uphill battle. Under the rational basis test, the classifications in Maine’s Sunday closing laws “come[ ] to us bearing a strong presumption of validity,”
 
 Beach Communications,
 
 508 U.S. at 314, 113 S.Ct. 2096. As another court has noted, “[e]ven foolish and misdirected provisions” will be upheld under this test.
 
 Craigmiles v. Giles,
 
 312 F.3d 220, 223-24 (6th Cir.2002). Kittery’s task is made all the more difficult because the state, in order to defeat Kittery’s claim, need only articulate some “reasonably conceivable set of facts” that could establish a rational relationship between the challenged laws and the government’s legitimate ends.
 
 Montalvo-Huertas,
 
 885 F.2d at 978. These proffered facts “need not be supported by an exquisite evidentia-ry record.”
 
 Craigmiles,
 
 312 F.3d at 224. Indeed, they need not be supported by any evidentiary record at all.
 
 See Heller v. Doe,
 
 509 U.S. 312, 320, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993) (“A State, moreover, has no obligation to produce evidence to sustain the rationality of a statutory classification.”);
 
 Beach Communications,
 
 508 U.S. at 315, 113 S.Ct. 2096 (“[A] legislative choice is not subject to courtroom factfind-ing and may be based on rational speculation unsupported by evidence or empirical data.”). With these general constraints in mind, we now turn to the particulars of this case.
 

 Kittery first attacks the Sunday closing laws as they apply to motor vehicle dealerships, asserting that the myriad accumulated exceptions to the laws “have rendered the scheme arbitrary and illogical.” Thus, according to Kittery, the closing laws “no longer bear a rational relation
 
 *48
 
 ship to the statute’s purported purpose[ ],” the promotion of Sunday as a day of rest and relaxation. We soundly rejected an identical argument in
 
 Montalvo-Huertas.
 
 In that case, a convenience store owner filed suit in the district court in Puerto Rico, challenging the commonwealth’s Sunday closing laws as unconstitutional.
 
 Montalvo-Huertas,
 
 885 F.2d at 973. Following an evidentiary hearing, the district court enjoined enforcement of the closing laws.
 
 Id.
 
 at 974. In defending the injunction on appeal, the plaintiff made the same argument Kittery now espouses, “complaining that the Closing Law’s coverage is so spotty, and its exemptions so prevalent, that it has become ineffectual, hence irrational.”
 
 Id.
 
 at 980. We rejected that contention, noting that
 

 the legislature need not approach goals on an all-or-nothing basis: “reform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind.... The legislature may select one phase of one field and apply a remedy there, neglecting the others.”
 

 Id.
 
 at 981 (quoting
 
 Williamson v. Lee Optical Inc.,
 
 348 U.S. 483, 489, 75 S.Ct. 461, 99 L.Ed. 563 (1955));
 
 see also City of New Orleans v. Dukes,
 
 427 U.S. 297, 303, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976) (per curiam) (“States are accorded wide latitude in the regulation of their local economies under their police powers, and rational distinctions may be made with substantially less than mathematical exactitude.”). In considering the plaintiffs argument, we stated: “To uphold the Closing Law, it is enough if each exemption is rationally related to
 
 some
 
 legitimate legislative aim, and if the exemptions, collectively, do not erode the rationality of the legislative scheme as a whole.”
 
 Montalvo-Huertas,
 
 885 F.2d at 981 (original emphasis). We then “inspected the exemptions one by one” and were “satisfied they [did] not defeat the Closing Law’s constitutionality.”
 
 [5]
 

 Id.
 

 Apparently recognizing the precedential hurdle of
 
 Montalvo-Huertas,
 
 Kittery does not argue that each and every one of section 3204’s listed exemptions fails to have a rational basis. Nor does Kittery argue that the promotion of Sunday as a day of rest is an illegitimate government purpose. Rather, Kittery tries to circumvent
 
 Mon-talvo-Huertas
 
 by arguing that Maine’s Sunday closing laws, in effect, single out motor vehicle sales for prohibition. Kit-tery points out that the provisions of sections 3203 and 3204, read together, permit
 
 any
 
 retail business to open on Sundays
 
 except
 
 for motor vehicle dealerships.
 
 See
 
 Me.Rev.Stat. Ann. tit. 17, §§ 3203-3204 (West Supp.2002). This singling out of motor vehicle sales, according to Kittery, is utterly irrational.
 
 [6]
 
 In reply, the state claims that the legislature could have reasonably assumed that sales commissions form a substantial portion of the compen
 
 *49
 
 sation of most motor vehicle salespersons. The legislature could have therefore reasonably concluded that motor vehicle salespersons would feel compelled to work on Sundays in order to earn commissions, regardless of whether their employers actually required them to work, thereby undermining the state’s legitimate goal of promoting Sunday as a day of rest. Kit-tery responds by pointing out that real estate brokers and motor home salespersons can work on Sundays,
 
 see
 
 Me.Rev. Stat. Ann. tit. 17, §§ 3203-A, 3204 (West Supp.2002), even though they typically work on a commission basis. Thus, Kit-tery maintains, it is arbitrary and irrational for the state to treat motor vehicle dealers any differently.
 

 The difficulty with Kittery’s response is twofold. First, it assumes that there must be a precise, mathematical fit between the classification and the legitimate government purpose the classification serves—an altogether insupportable assumption given the unexacting nature of rational basis review.
 
 See Dukes,
 
 427 U.S. at 303, 96 S.Ct. 2513;
 
 Montalvo-Huertas,
 
 885 F.2d at 980. Second, as the state argues, the legislature could have reasonably concluded that the people of Maine are more fundamentally in need of shelter and housing than simple transportation, thereby justifying an exemption for the sale of homes, including motor homes. Or the legislature could have reasonably determined that it would be impractical to enforce a Sunday prohibition on home sales because much of a real estate broker’s work takes place in the properties being shown (thus making the policing of such a prohibition overly burdensome).
 
 [7]
 
 Or the legislature could have reasonably concluded that motor homes are used almost exclusively for recreational purposes (i.e., no one drives a motor home to work), and that the Sunday sale of motor homes therefore actually promotes Sunday as a day of rest, relaxation, and recreation.
 
 [8]
 
 Regardless of the underlying justifications and rationales, this court is not the forum in which to weigh their respective merits. Suffice it to say that they are not so spurious as to render the statute “palpably arbitrary.”
 
 Nordlinger v. Hahn,
 
 505 U.S. 1, 18, 112 S.Ct. 2326, 120 L.Ed.2d 1 (1992). Thus Kittery’s attack against Maine’s Sunday closing scheme—as it applies to motor vehicle dealerships—must fail.
 
 [9]
 

 In addition to challenging the state’s decision to treat motor vehicle dealerships differently from other retail establishments, Kittery also challenges the
 
 *50
 
 state’s decision to classify motorcycles as motor vehicles.
 
 [10]
 

 See
 
 Me.Rev.Stat. Ann. tit. 29-A, § 101(38) (West 1996 & Supp. 2002). According to Kittery, “motorcycles are recreational vehicles, and as such are similarly situated with other recreational vehicles and equipment that can be sold on Sundays.” Hence, Kittery maintains, the legislature’s decision to classify motorcycles as motor vehicles is “arbitrary and irrational.” We disagree.
 

 In its brief, Kittery states that, “[i]n Maine, one purchases a motorcycle not as a mode of transportation, but as a form of recreation akin to snowmobiles, boats, motor homes, jet skis, or all-terrain vehicles.” In support of this pronouncement, Kittery points us to affidavits and deposition testimony of Kittery’s vice-president and its general manager. With all due respect to Kittery and its staff, reasonable minds can differ, and the legislature could have reasonably concluded that, weather permitting, many people in Maine would use motorcycles as a mode of general transportation (for example, to go to and from work or school). And the legislature could have just as reasonably concluded that not many people in Maine would use snowmobiles, boats, motor homes, jet skis, or all-terrain vehicles for such routine transportation purposes. Buttressing this conclusion is the fact that motorcycles, like other motor vehicles, can be operated on roads and highways, whereas all-terrain vehicles and snowmobiles cannot.
 
 See
 
 Me.Rev.Stat. Ann. tit. 12, §§ 7827, 7857 (West 1994
 
 &
 
 Supp.2002). Similarly, motorcycle operators, like motor vehicle operators, must be licensed, whereas operators of all-terrain vehicles and snowmobiles need not.
 
 Id.
 
 §§ 7823, 7853.
 

 In sum, we are not led to the inescapable conclusion that the legislature acted irrationally when it chose to classify motorcycles as motor vehicles rather than recreational vehicles. We agree with the observation of amicus that “[n]o doubt, the Legislature
 
 could
 
 have treated motorcycles the way it treats recreational (off road) vehicles for Sundays sales purposes.” To Kittery’s detriment, however, the legislature chose not to, and we will not disturb that decision.
 

 B. Kittery’s Other Arguments
 

 Before the district court, Kittery advanced two other arguments—that sections 3203 and 3204 are unconstitutionally vague, and that the 1990 amendment to section 3204 impliedly repealed section 3203. The district court, finding that Kit-tery was “wrong and so clearly wrong on these issues,” disposed of these arguments in a footnote.
 
 Kittery Motorcycle,
 
 201 F.Supp.2d at 191 n. 1. We agree that these arguments may be easily dispatched.
 

 First, as for the void-for-vagueness argument, the Due Process Clause of the Fourteenth Amendment “requires that statutes or regulations be sufficiently specific to provide fair notice of what they proscribe.”
 
 Brasslett v. Cota,
 
 761 F.2d 827, 838 (1st Cir.1985). The statute must “define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.”
 
 Love v. Butler,
 
 952 F.2d 10, 14 (1st Cir.1991);
 
 see also United States v. Marquardo,
 
 149 F.3d 36, 41 (1st Cir.1998). We cannot imagine how the text of section 3203 could be more plain: “any person who carries on or engages in the business of buying, selling, exchanging, dealing or trading in new or used motor vehicles ... on the first day of the week, commonly known and designated as Sunday, is a
 
 *51
 
 disorderly person.” Me.Rev.Stat. Ann. tit. 17, § 3203 (West Supp.2002). The statute indicates with sufficient intelligibility and definiteness what conduct is prohibited, and we cannot discern any way in which the statute lends itself to arbitrary or discriminatory enforcement.
 

 Kittery also argues that the prohibitions of section 3203 were impliedly repealed by the 1990 amendment to section 3204. We reject this argument as well. “Courts do not lightly assume that one statute has implicitly repealed another.”
 
 Greenless v. Almond,
 
 277 F.3d 601, 608 (1st Cir.2002);
 
 see United States v. Will,
 
 449 U.S. 200, 221, 101 S.Ct. 471, 66 L.Ed.2d 392 (1980) (“As a general rule, repeals by implication are not favored.”);
 
 State v. London,
 
 156 Me. 123, 162 A.2d 150, 152 (1960) (“It is well settled that a repeal by implication is not favored and will not be upheld in doubtful cases.”).
 

 Given our reluctance to find an implied repeal, if we can reasonably read the two statutes consonantly, we will.
 
 See Rhode Island v. Narragansett Indian Tribe,
 
 19 F.3d 685, 703 (1st Cir.1994) (“In other words, so long as the two statutes, fairly construed, are capable of coexistence, courts should regard each as effective.”). The most straightforward and obvious way to read the two statutes in tandem is to treat section 3203 as a narrowly focused prohibition on Sunday motor vehicle sales, and to regard section 3204 as a law of general application, applicable to every kind of business. Thus, retailers who qualify under 3204 may open on Sunday, but they may not sell motor vehicles pursuant to section 3203.
 
 [11]
 

 See Radzanower v. Touche Ross & Co.,
 
 426 U.S. 148, 153, 96 S.Ct. 1989, 48 L.Ed.2d 540 (1976) (“It is a basic principle of statutory construction that a statute dealing with a narrow, precise, and specific subject is not submerged by a later enacted statute covering a more generalized spectrum.”). We therefore conclude that section 3203 governs the sale of motor vehicles on Sunday, notwithstanding the 1990 amendment to section 3204.
 
 [12]
 

 III.
 

 For the foregoing reasons, the judgment of the district court is
 
 AFFIRMED.
 
 Costs to appellee.
 

 It is so ordered.
 

 [1]
 

 . "The Lord’s Day includes the time between 12 o’clock on Saturday night and 12 o’clock on Sunday night.” Me.Rev.Stat. Ann. tit. 17, § 3201 (West 1983).
 

 [2]
 

 . The amendment began in the Maine legislature as an “Initiated Bill.”
 
 See
 
 1989 Me. I.B. 3;
 
 see also
 
 Me. Const, art. IV, pt. 3, § 18 (providing for direct initiative of legislation). The Maine electorate approved the proposed amendment at the general election held on November 6, 1990.
 

 [3]
 

 .Section 3203-A exempts "motor homes” from the purview of section 3203. Me.Rev. Stat. Ann. tit. 17, § 3203-A (West Supp.2002).
 

 [4]
 

 . See U.S. Const, amend. XIV, § 1 ("No Stale shall ... deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction equal protection of the law.”).
 

 [5]
 

 . While we considered each of the statutory exemptions in
 
 Montalvo-Huertas,
 
 we did not explicitly address each and every one in our opinion. "In the interests of brevity, we discuss[ed] only those exceptions which [had] drawn [plaintiff’s] heaviest fire.”
 
 Montalvo-Huertas,
 
 885 F.2d at 981. For example, we concluded that an exemption for businesses in the Old San Juan tourist zone "could reasonably be found to promote the public weal by sustaining an important local industry, one whose clientele are in Puerto Rico to play, not work — and to whom the 'day of rest' concept does not apply.”
 
 Id.
 

 [6]
 

 .
 
 Kittery does not allege any animus or improper motive on the part of the legislature in singling out motor vehicle dealerships.
 
 See Romer v. Evans,
 
 517 U.S. 620, 634, 116 S.Ct. 1620, 134 L.Ed.2d 855 (1996) ("[I]f the constitutional conception of 'equal protection of the laws’ means anything, it must at the
 
 very
 
 least mean that a bare ... desire to harm a politically unpopular group cannot constitute a
 
 legitimate
 
 governmental interest.”). In
 
 *49
 
 deed, the Maine Auto Dealers Association, "an association of franchised new car and truck dealers with approximately 150 members located throughout the State of Maine,” has filed an amicus brief in support of the state. The Association, on behalf its members, was the original sponsor of section 3203 and over the years has "repeatedly lobbied against attempts to amend, repeal or water down” the statute. Amicus Br. at 1.
 

 [7]
 

 . In contrast, one need only drive past the dealership's fixed location to determine whether the closing law is being violated.
 

 [8]
 

 . The state quotes much of the legislative history in support of its proffered justifications. While we appreciate the thoroughness of the state’s brief, we feel obliged to- point out that, under rational basis review, it is " 'constitutionally irrelevant [what] reasoning in fact underlay the legislative decision.' "
 
 U.S. R.R. Retirement Bd. v. Fritz,
 
 449 U.S. 166, 179, 101 S.Ct. 453, 66 L.Ed.2d 368 (1980) (quoting
 
 Flemming v. Nestor,
 
 363 U.S. 603, 612, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960)).
 

 [9]
 

 .The state also claims that the Sunday closing laws are rationally related to other legitimate state interests—e.g., reducing overhead costs in an inelastic market and providing a day in which consumers can browse without being bothered by salespersons. Having determined that the closing laws are rationally related to the state's legitimate interest in the promotion of Sunday as a day of rest, we need not consider these other arguments.
 

 [10]
 

 . " 'Motorcycle' means a motor vehicle that has a seat or a saddle for the use of the rider and is designed to travel with not more than 3 wheels in ground contact.” Me.Rev.Stat. Ann. tit. 29-A, § 101(38) (West 1996 & Supp.2002).
 

 [11]
 

 . The record reflects that this is precisely what the plaintiff has done in the past—remain open on Sundays for the sale of other merchandise, but not motorcycles.
 

 [12]
 

 . Although the statutory provisions themselves refute any argument for implied repeal, we note that the legislative activity subsequent to the 1990 amendment confirms the unmistakable import of the statutes. In 1995 the Maine Legislature refused to enact a bill which would have expressly repealed section 3203,
 
 see An Act to Permit Motor Vehicle Dealerships to Operate on Sundays,
 
 L.D. 109, 117th Leg., 1st Sess. (Me.1995) (unenacted), and in 2001 refused to enact a bill which would have exempted the sale of motorcycles from section 3203,
 
 see An Act to Permit the Sale of Motorcycles on Sunday,
 
 L.D. 68, 120th Leg., 1st Sess. (Me.2001) (unenacted). The floor debates around this latter bill—which was cosponsored by Kittery's representative on Kittery's behalf—make clear that no one thought that the 1990 amendment had impliedly repealed section 3203.
 
 See
 
 120 Me. Leg-is. Rec. H-489 (Apr. 25, 2001) ("As it is, six days [of the week] you are able to buy the motorcycle.”) (statement of Rep. Thomas);
 
 id.
 
 H-491 ("I guess I just can't understand why we, as a government, have to hang on to this one little vestige of what somebody called the blue laws and not allow this one individual [Kittery] to stay open and run his business and try to make a sale or two.”) (statement of Rep. Morrison).