Stephen P. MEDEIROS

v.

**ATLANTIC STATES MARINE FISHERIES COMMISSION; and Jan Reitsma, as Director of the Rhode Island Department of Environmental Management, United States of America, intervenor.**

**C.A. No. 01–543ML.**

United States District Court,
D. Rhode Island.

May 24, 2004.

---

Richard S. Humphrey, Amy E. Stratton, Law Offices of Richard S. Humphrey, Tiverton, RI, Robert J. Caron, Providence, RI, for plaintiff.

Terence Tierney, Esq., Attorney General's Office, Providence, RI, Gary E. Powers, Department of Environmental Management Office of Legal Services, Wakefield, RI, for defendant, Rhode Island Department of Environmental Management.

Michael P. Iannotti, U.S. Attorney Office, Providence, RI, R. Justin Smith, Environment and Natural Resources Division, Policy, Legislation & Special Litigation, Washington, DC, for movant.

Gregory L. Benik, Holland & Knight LLP, Providence, RI, Paul A. Lenzini, Alexandria, VA, R. Justin Smith, Environment and Natural Resources Division, Policy, Legislation & Special Litigation, Washington, DC, for defendant, Atlantic States, Atlantic States Marine Fisheries Council (ASMFC).

### MEMORANDUM AND ORDER

LISI, District Judge.

This matter is before the court on the plaintiff's motion for summary judgment and the defendants' cross-motions for summary judgment. For the reasons set forth below, the motion of the plaintiff, Stephen P. Medeiros ("Medeiros"), is denied. The cross-motions for summary judgment filed by the defendants, Atlantic States Marine Fisheries Commission ("ASMFC" or "the commission"), and Jan Reitsma in his capacity as director of the Rhode Island Department of Environmental Management ("RIDEM") are granted.

#### I.

This is an action for injunctive and declaratory relief. The plaintiff is a commercial fisherman who catches lobster by a non-trap method, specifically by dragging an otter trawl behind his fishing vessel. Third Amended Verified Complaint, ¶ 1; Plf.'s Rule 12.1 Statement of Undisputed

Facts, ¶1. In Count I of his complaint,[1] plaintiff contends that a regulation adopted by ASMFC and RIDEM that imposes limits on the number of lobsters that may be landed by fishermen using non-trap methods is violative of the due process and equal protection clauses of the Fifth and Fourteenth Amendments to the United States Constitution. In Count II, plaintiff asserts that the statutory scheme pursuant to which the regulation was implemented, the Atlantic Coastal Fisheries Cooperative Management Act ("the coastal management act"), 16 U.S.C. §§ 5101–5108, is violative of the Tenth Amendment. The United States of America has intervened in this action for the purpose of addressing plaintiff's Tenth Amendment claim.

### A. Statutory and Regulatory Framework.

ASMFC was established by the Atlantic States Marine Fisheries Compact, an interstate agreement consented to and approved by Congress in 1942. Pub.L. 77–539, 56 Stat. 267; see 16 U.S.C. § 5102(3). Rhode Island is a signatory to the compact. R.I. Gen. Laws § 20–8–1. The commission includes representatives from each signatory state. The compact was intended "to promote the better utilization of the fisheries, marine, shell and anadromous of the Atlantic seaboard by the development of a joint program for the promotion and protection of such fisheries and by the prevention of the physical waste of the fisheries from any cause." Pub.L. 77–539.

In 1993, Congress enacted the coastal management act, 16 U.S.C. §§ 5101–5108. The purpose of the enactment is "to support and encourage the development, implementation, and enforcement of effective interstate conservation and management of Atlantic coastal fishery resources." 16 U.S.C. § 5101(b). The coastal manage-

ment act required ASMFC to prepare and adopt coastal fishery management plans providing for the conservation of coastal fishery resources. 16 U.S.C. § 5104(a)(1). Each compact-member state identified in a management plan is required to implement and enforce the plan's measures. 16 U.S.C. § 5104(b)(1). ASMFC is responsible for monitoring its member states' implementation and enforcement of fishery management plans. 16 U.S.C. § 5104(c). The commission is required to provide notice to the United States Secretary of Commerce of a state's noncompliance with a plan. 16 U.S.C. § 5105.

Within 30 days of receipt of a notice of noncompliance from the ASMFC, the secretary is required to determine whether the subject state has failed to carry out its implementation and enforcement responsibilities under § 5104, and, if so, "whether the measures that the State has failed to implement and enforce are necessary for the conservation of the fishery in question." 16 U.S.C. § 5106(a). The secretary must afford the alleged noncomplying state an opportunity to be heard. 16 U.S.C. § 5106(b). If the secretary finds that a state has failed to carry out its responsibilities under § 5104 and that the measures at issue are necessary for fishery conservation, "the Secretary shall declare a moratorium on fishing in the fishery in question within the waters of the noncomplying State." 16 U.S.C. § 5106(c).

In December 1997, ASMFC adopted Amendment 3 to the Interstate Fishery Management Plan for American Lobster. Defs.' Rule 12.1 Supporting Statement of Material Facts, ¶6. Rhode Island was among the member states voting in favor of the amendment. Administrative Record at 01401–01404. Amendment 3 includ-

---

**1.** Unless otherwise indicated, all references herein are to plaintiff's third amended veri- fied complaint.

ed coastwide requirements applicable to all ASMFC member states, including Rhode Island. *See* Admin. Rec. at 02334, 02362. In addition to delineating regulations pertaining to the trap method of landing lobsters, the amendment set forth limits, applicable coastwide, on the number of lobsters that could be landed by fishermen using non-trap methods.

### 3.1.7 Limits on Landings by fishermen using gear or methods other than traps

Landings by fishermen using gear or methods other than traps (non-trap fishermen) will be limited to no more than 100 lobsters per day (based on a 24-hour period) up to a maximum 500 lobsters per trip, for trips 5 days or longer.

ASMFC Fishery Management Report No. 29, Amendment 3 to the Interstate Fishery Management Plan for American Lobster, Admin. Rec. at 02362.

The Rhode Island Marine Fisheries Council ("RIMFC"), through its enactment of Regulation 15.18, then rendered the non-trap landing limits set forth in ASMFC Amendment 3.1.7 applicable in Rhode Island's coastal waters.[2] Plf.'s Statement of Undisputed Facts, ¶ 5.

Regulation 15.18 was repealed by RIMFC in June 2000. *Id.,* ¶ 13; Defs.' Opposing Statement of Material Facts at 1. ASMFC then found that the state was not in compliance with Amendment 3. Plf.'s Statement of Undisputed Facts, ¶ 14. Ultimately, in order to avoid imposition of a moratorium, the regulation was readopted by RIDEM in March 2001.[3] *Id.,* ¶ 16. Regulation 15.18 provides:

*Landings of lobsters taken by gear or methods other than trap—Limits.*

Landings by fishermen using gear or methods other than traps (non-trap fishermen) will be limited to not more than 100 lobsters per day (based on a 24-hour period) up to a maximum of 500 lobsters per trip for trips of five (5) days or longer.

Plf.'s Statement of Undisputed Facts, ¶ 2.

### B. *The Present Litigation.*

In October 2001, Medeiros instituted the instant action for declaratory and injunctive relief in the Rhode Island Superior Court. In November 2001, RIDEM removed the matter to this court.

The plaintiff catches fish by way of an otter trawl. Plf.'s Statement of Undisputed Facts, ¶ 1. On occasion, plaintiff catches lobsters in his nets. *Id.* On June 5, 1999, Medeiros was charged with a misdemeanor offense of having landed 131 lobsters by non-trap method in violation of the daily limit set forth in Regulation 15.18. Third Amended Verified Complaint ¶ 30, Exh. B. The state superior court dismissed the charge. *Id.* ¶ 30, Exh. C. The plaintiff avers that he seeks to catch, has caught, and anticipates catching more than 100 lobsters per day or 500 lobsters per trip via non-trap methods. *Id.* ¶ 30.

In Count I of his complaint, Medeiros contends that Amendment 3 and Regulation 15.18 are violative of the Equal Protection and Due Process clauses. Specifically, plaintiff alleges that the challenged regulation imposes limits on lobster land-

---

**2.** From 1981 through July 13, 2001, the Rhode Island Marine Fisheries Council (RIMFC) possessed regulatory jurisdiction over all marine animal species within the state. R.I. Gen. Laws § 20-3-2, as amended through R.I. Pub.L.1998, ch. 441, § 1. RIMFC's authority included the promulgation and adoption of rules and regulations governing lobster fishing within state territory. *Id.*

In July 2001, § 20-3-2 was amended, limiting the council's role to serving in an advisory capacity to RIDEM's director. R.I. Pub.L. 2001, ch. 304, § 2.

**3.** In November 2000, the state reinstated the non-trap limit on an emergency basis. Plf.'s Statement of Undisputed Facts, ¶ 15.

ings by non-trap methods without restricting the number of lobsters that may be caught through the use of lobster traps. Medeiros contends that the limitations imposed on non-trap landings are without any rational basis. The plaintiff seeks a declaration that the non-trap regulation is invalid and an order directing defendants to prepare an amendment to the lobster-fishery plan that "does not contain a possession limit for non-trap fishermen." *Id. foll.* ¶ 35.

In Count II, plaintiff alleges that the coastal management act is violative of the Tenth Amendment. In particular, Medeiros contends that through the enactment, Congress has impermissibly required the state to impose federal regulations, including Regulation 15.18, governing lobster fishing within state waters.

The plaintiff seeks entry of summary judgment in his favor on both counts of his complaint. Both ASMFC and RIDEM have filed cross-motions for summary judgment.

On May 30, 2003, the court conducted a hearing concerning plaintiff's standing to maintain his complaint. For the reasons set forth on the record during the hearing, and as reflected in the court's written order entered on that same date, the court determined, based on the factual representations made by plaintiff's counsel, that the plaintiff had proffered allegations sufficient to support a determination that Medeiros had sustained injury-in-fact as a result of the non-trap landing limitation.[4] Accordingly, the court concluded that plaintiff had standing to pursue Count I of his complaint. Order (May 30, 2003), ¶ 1. The court reserved determination on the issue of plaintiff's standing to pursue his Tenth Amendment challenge as asserted in Count II. *Id.* ¶ 3.

Further hearing on the parties' respective motions for summary judgment was conducted on July 28, 2003. The court then took the matter under advisement.

## II.

### A. *Summary Judgment Standard.*

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "Cross-motions for summary judgment do not alter the basic Rule 56 standard, but rather simply require [the court] to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed." *Adria Int'l Group, Inc. v. Ferre Dev., Inc.,* 241 F.3d 103, 107 (1st Cir.2001) (citing *Wightman v. Springfield Terminal Ry. Co.,* 100 F.3d 228, 230 (1st Cir.1996)).

### B. *Undisputed Facts.*

The non-trap landing limits that are the subject of the instant litigation comprise one of several components of Amendment 3. *See* Admin. Rec. at 02362–02365. An increase in lobster landings was observed over the three-decade period preceding the amendment. *Id.* at 02346. That increase was attributed both to an increased abundance of lobsters and to an increase in fishing effort. *Id.* Increased fishing effort had been observed over the three-decade period preceding 1997. *Id.* at 02343. Intense fishing effort for lobster has resulted in the resource being overfished. Defs.' Supporting Statement of Material Facts, ¶ 2. The purpose of Amendment 3 is to restore egg production in order to prevent overfishing in each of the seven lobster

---

**4.** Pursuant to the court's directive, plaintiff has amended his complaint to incorporate the factual assertions proffered by counsel during the May 30, 2003 hearing.

management areas designated in the plan. *Id.* ¶¶ 2, 4; Admin. Rec. at 02335, 02359. "Amendment 3 consists of a set of management measures, to be implemented by ASMFC member states, to bring all sources of lobster mortality in the seven management areas under control by capping and then reducing fishing effort in order to meet the [amendment's] egg-rebuilding targets." Defs.' Supporting Statement of Material Facts, ¶ 5.

The primary method by which lobsters are landed is through the use of traps. *Id.* ¶ 7; Admin. Rec. at 02343, 02346. For the 1984–1994 time period, non-trap landings, including by otter trawl nets, accounted for 2.33 percent of total lobster landings. Defs.' Supporting Statement of Material Facts, ¶ 7; Admin. Rec. at 02343.

The increased fishing effort for lobster over the three-decade period examined was attributed to several factors, including an increase in the number of traps fished, an increase in the total area fished, more effective trap design and construction, and increased "soak" time (i.e. the amount of time that traps remain in the water before hauling). Admin Rec. at 02343.

The lobster management measures set forth in Amendment 3 included an increase in the minimum size of lobsters that could be possessed, a reduction in the permitted maximum number of traps that could be fished per vessel, an increase in the required size of trap escape vents, a reduction in maximum trap volume, and a requirement that traps not constructed entirely of wood contain a biodegradable panel that would allow for the escape of lobster in the event the trap was abandoned or lost. Defs.' Supporting Statement of Material Facts, ¶¶ 9–10; Admin. Rec. at 02362–02365. In addition, Amend-

ment 3 set forth the non-trap landing limits that are at issue in the instant litigation. Admin. Rec. at 02362.

As described by defendants, the purpose of the non-trap limitations was "to cap fishing effort and prevent the non-trap sector from redirecting its effort to the lobster fishery from other fisheries primarily targeted by that sector." Defs.' Supporting Statement of Material Facts, ¶ 11. The plaintiff has not disputed this factual assertion and the court accepts the statement as true. *See* D.R.I. Loc. R. 12.1(d) ("[T]he court may assume that the facts as claimed by the moving party are admitted to exist without controversy except as and to the extent that such facts are controverted by affidavit filed in opposition to the motion, or by other evidentiary materials which the court may consider under Rule 56 of the Federal Rules of Civil Procedure.").

### C. *Equal Protection and Due Process Claims.*

■ In Count I of his complaint, plaintiff asserts that the non-trap catch limitations set forth in Amendment 3 and Regulation 15.18 violate his Fourteenth Amendment right to equal protection, and his right to due process as guaranteed by the Fifth and Fourteenth Amendments. Specifically, plaintiff contends that the challenged provision treats fisherman who harvest lobsters by non-trap means differently from those who utilize lobster traps. Third Amended Verified Complaint, ¶ 35. The plaintiff does not further delineate the substantive due process component of his claim and does not distinguish his due process claim from his equal protection argument. In fact, Medeiros' memorandum in support of his motion for summary judgment is silent as to the basis for his due process claim.[5] The plaintiff

---

5. The plaintiff's complaint does not allege deprivation of a property right. His motion for summary judgment and supporting memoran-

da are silent on this matter. At oral argument, upon inquiry by the court, plaintiff's

appears to rely entirely on an equal protection argument. Therefore, this court will examine Count I in the context of an equal protection analysis. *See Kittery Motorcycle, Inc. v. Rowe*, 320 F.3d 42, 46 (1st Cir.2003) (quoting *Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 470 n. 20, 101 S.Ct. 715, 66 L.Ed.2d 659 (1981)) ("if [a] statute does not violate equal protection, 'it follows *a fortiori* that [it] does not violate the Fourteenth Amendment's Due Process Clause' ").

It is undisputed that the regulation at issue neither burdens a fundamental right nor employs a suspect classification. Accordingly, the court must employ a "rational basis" standard in evaluating plaintiff's equal protection challenge. *E.g., Kittery Motorcycle*, 320 F.3d at 47 (citations omitted). "Social and economic legislation ... that does not employ suspect classifications or impinge on fundamental rights must be upheld ... when the legislative means are rationally related to a legitimate government purpose." *Hodel v. Indiana*, 452 U.S. 314, 331, 101 S.Ct. 2376, 69 L.Ed.2d 40 (1981) (citations omitted).

Under the rational basis test, the challenged regulation is afforded a "strong presumption of validity." *F.C.C. v. Beach Communications, Inc.*, 508 U.S. 307, 314, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993). The rational basis test is satisfied " 'if any reasonably conceivable set of facts could establish a rational relationship between [the challenged regulation] and the government's legitimate ends.' " *Montalvo–Huertas v. Rivera–Cruz*, 885 F.2d 971, 978 (1st Cir.1989) (quoting *Tenoco Oil Co., Inc. v. Dep't of Consumer Affairs*, 876 F.2d 1013, 1021 (1st Cir.1989)). The proffered facts need not be supported by an evidentiary record. *Kittery Motorcycle*, 320 F.3d at 47 (citing *Heller v. Doe*, 509 U.S. 312, 320, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993)). "[A] legislative choice is not subject to

courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data." *Beach Communications*, 508 U.S. at 315, 113 S.Ct. 2096. Moreover, the challenged regulation need not be the least burdensome or the most effective means of accomplishing the regulatory goal. *Starlight Sugar, Inc. v. Soto*, 253 F.3d 137, 146 (1st Cir.2001) (citing *Beach Communications*, 508 U.S. at 314, 113 S.Ct. 2096). To satisfy the rational basis test, the challenged regulation need not be "the *best* means of promoting a legitimate government interest." *New York State Trawlers Ass'n v. Jorling*, 16 F.3d 1303, 1309 (2d Cir.1994). Rather, the regulation need only be "*a reasonable* means of promoting the interest." *Id.*

As a matter of law, based upon the undisputed facts presented, Amendment 3.1.7 and Regulation 15.18 survive rational basis scrutiny. There is no dispute that the conservation of coastal lobster fishery resources is a legitimate governmental objective. *See id.* Amendment 3 is a set of management measures designed to bring all sources of lobster mortality in its designated management areas under control by capping and then reducing fishing effort. Defs.' Supporting Statement of Material Facts, ¶ 5.

Non-trap fishing is one source, albeit small, of lobster landings and contributes to lobster mortality. *Id.* ¶ 7. The limitations on non-trap landings set forth in Amendment 3.1.7 and Regulation 15.18 comprise one component of a comprehensive management scheme which regulates both trap and non-trap lobster fishing as part of the effort to reduce lobster mortality. For example, the regulatory scheme also reduces the number of lobster traps that may be fished per vessel. *Id.* ¶ 10. In sum, although non-trap lobster fishing is a smaller contributor to lobster mortali-

counsel described the property right at issue    as plaintiff's "right to make a living".

152

ty than trap fishing, the restrictions imposed upon the non-trap sector are rationally related to the recognized conservation objective.

The plaintiff challenges the efficacy of the non-trap limitations in furthering lobster conservation efforts. However, issues as to the degree, if any, that the landing limitations will in fact benefit fishery preservation are not relevant to the rational basis inquiry. *See Montalvo–Huertas*, 885 F.2d at 982 (quoting *Ferguson v. Skrupa*, 372 U.S. 726, 729, 83 S.Ct. 1028, 10 L.Ed.2d 93 (1963)) (recognizing that it is not up to the federal courts to decide on the wisdom and utility of legislation).

This court, therefore, concludes that plaintiff's equal protection claim fails as a matter of law.

D. *The Tenth Amendment Claim*

■ In Count II of his complaint, plaintiff contends that the coastal management act is violative of the Tenth Amendment. Medeiros asserts that the enactment impermissibly compels the State of Rhode Island to implement and enforce a federal regulatory program. Specifically, Medeiros contends that the coastal management act requires the state to adopt and enforce ASMFC's fishery management plans including, in particular, the non-trap landing limitations at issue in this proceeding. The defendants and the intervenor contend that plaintiff lacks standing to pursue this claim.

The defendants and the United States proffer three grounds in support of their claim that plaintiff lacks standing to maintain a Tenth Amendment challenge to 16 U.S.C. §§ 5101–5108. First, RIDEM, ASMFC and the United States contend that Medeiros has not demonstrated that he has, or will sustain any distinct injury-in-fact from the non-trap landing limitations at issue. Second, the defendants and the intervenor assert that plaintiff, as a private citizen, lacks standing to pursue a

Tenth Amendment challenge on behalf of the State of Rhode Island. Third, they allege that a determination that the coastal management act is violative of the Tenth Amendment will not redress the injury allegedly sustained by plaintiff.

The first ground proffered by defendants and the United States has been addressed previously by this court with regard to Count I. See Order (5/30/2003), ¶ 1. Concerning Count II, the defendants have proffered the same absence-of-injury-in-fact argument that they made with respect to Count I. As with regard to Count I, this component of defendants' challenge to plaintiff's standing to pursue Count II of his complaint similarly fails.

Next, the court must consider whether plaintiff, as a private party, possesses standing to assert a Tenth Amendment challenge to the coastal management act. Generally, a plaintiff "must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975) (citations omitted). The gravamen of plaintiff's Tenth Amendment claim is that the coastal management act amounts to an impermissible encroachment upon state sovereignty. The defendants and the United States contend that the constitutional right at issue inures to the state itself, not plaintiff, and that Medeiros, as a private plaintiff, lacks standing to pursue a claim of violation of that right on the state's behalf.

In *Tennessee Elec. Power Co., v. Tennessee Valley Auth.*, 306 U.S. 118, 144, 59 S.Ct. 366, 83 L.Ed. 543 (1939), the Supreme Court stated that the appellants, fourteen private utility companies, "absent the states or their officers, have no standing in this suit to raise any question under the [Tenth] [A]mendment." The parties and the intervenor dispute whether the

Court's statement reflects the current state of the law on the subject.

Recently, the Supreme Court granted certiorari with regard to, but ultimately declined to address the question of whether private plaintiffs have standing to assert states' rights under the Tenth Amendment where the states' legislative and executive branches expressly approve and accept the benefits and terms of the federal statute in question. *Pierce County, Washington v. Guillen,* 537 U.S. 129, 148 n. 10, 123 S.Ct. 720, 154 L.Ed.2d 610 (2003). The Court of Appeals for the First Circuit has not addressed whether private litigants may pursue Tenth Amendment claims. Other circuit courts which have considered the issue are in disagreement. Compare *Gillespie v. City of Indianapolis,* 185 F.3d 693 (7th Cir.1999); *Atlanta Gas Light Co. v. U.S. Dep't of Energy,* 666 F.2d 1359 (11th Cir. 1982) (both finding private-party standing to assert Tenth Amendment claims), with *United States v. Parker,* 362 F.3d 1279 (10th Cir.2004) (citing *Mountain States Legal Found. v. Costle,* 630 F.2d 754 (10th Cir.1980)) (concluding that no private-party standing); *see Nance v. E.P.A.,* 645 F.2d 701, 716 (9th Cir.1981) (commenting that standing of private litigants to assert Tenth Amendment claim "may be seriously questioned"); *see also Lomont v. O'Neill,* 285 F.3d 9, 13 n. 3 (D.C.Cir.2002) (not reaching private-party standing issue but noting disagreement).

In support of his claim of standing to assert a Tenth Amendment challenge to the coastal management act, plaintiff relies, in part, on *New York v. United States,* 505 U.S. 144, 112 S.Ct. 2408, 120 L.Ed.2d 120 (1992). That proceeding involved Tenth Amendment challenges instituted by the State of New York and two of its counties to the Low–Level Radioactive Waste Policy Amendments Act of 1985, 42 U.S.C. § 2021b *et seq.* Because none of the cases had been instituted by private

litigants, the issue of private party standing to assert Tenth Amendment claims was not a matter before the Supreme Court for consideration.

In addressing the merits of the petitioners' constitutional claims, the Supreme Court held that one of the three challenged provisions was violative of the Tenth Amendment. In so doing, the Court rejected respondents' assertion that the State of New York's consent to the statute's enactment precluded a determination that the provision amounted to an infringement of state sovereignty. *Id.* at 181, 112 S.Ct. 2408. Specifically, the Court observed that the fundamental purpose of the Constitution was to protect individuals rather than the states themselves:

> The Constitution does not protect the sovereignty of States for the benefit of the States or state governments as abstract political entities, or even for the benefit of the public officials governing the States. To the contrary, the Constitution divides authority between federal and state governments for the protection of individuals. State sovereignty is not just an end in itself: "Rather, federalism secures to citizens the liberties that derive from the diffusion of sovereign power."

*Id.* (quoting *Coleman v. Thompson,* 501 U.S. 722, 759, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991) (Blackmun, J., dissenting)). Accordingly, "[w]here Congress exceeds its authority relative to the States ... the departure from the constitutional plan cannot be ratified by the 'consent' of state officials." *Id.* at 182, 112 S.Ct. 2408.

However, the Supreme Court's dicta in *New York* is not determinative of the issue presented in the instant proceeding. The standing of a private litigant to assert a Tenth Amendment claim was not an issue presented in that litigation. The Supreme

Court has not expressly overruled *Tennessee Elec. Power Co.* In fact, more than ten years after issuance of its opinion in *New York,* the Supreme Court, although having had the opportunity to do so in *Pierce County,* declined to address the private party standing issue. Under such circumstances, the principle enunciated in *Tennessee Elec. Power Co.* remains in force and this court is bound to apply it. *See Rodriguez de Quijas v. Shearson/American Express, Inc.,* 490 U.S. 477, 484, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989) ("If a precedent of this Court has a direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions."). *But see Gillespie v. City of Indianapolis,* 185 F.3d at 703 (relying on *New York* in determining that a private litigant had standing to assert a Tenth Amendment claim). Accordingly, this court concludes that Medeiros, as a private litigant, lacks standing to assert a Tenth Amendment challenge to the coastal management act.[6]

### III.

For the above reasons, the motion of the plaintiff, Stephen P. Medeiros, for entry of summary judgment is denied. The cross-motions for summary judgment filed by the defendants Atlantic States Marine Fisheries Council and Jan Reitsma in his capacity as director of the Rhode Island Department of Environmental Management are granted.

SO ORDERED.

---

6. In light of the court's determination on this point, the court does not reach the "redressability" component of defendants' and intervenor's standing challenge.