[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
Before this Court is an appeal from a decision of the Rhode Island Department of Environmental Management (D.E.M.), denying Appellant Steven Riley a commercial fishing license with certain finfish and shellfish endorsements. Appellant has also presented a motion for declaratory relief requesting that this Court declare G.L. 1956 § 12-2.1-5(1)(ii) and Rule 7 of the Rules and Regulations Governing the Management of Marine Fisheries (Rule 7) unconstitutional, and order that Appellant be given the requested multi-purpose fishing license. Jurisdiction is pursuant to G.L. 1956 § 42-35-15 and G.L. 1956 § 9-30-1.
 FACTS AND TRAVEL
Appellant Steven Riley (Riley) sought and was denied a commercial fishing license. Riley applied for a principal effort commercial fishing license with shellfish/quahog and restricted finfish endorsements under G.L. 1956 § 20-2.1-5. The Rhode Island Department of Environmental Management (D.E.M.) denied his request based on the statutory language of § 20-2.1-5 that allowed only those who had such licenses as of December 31, 2002 (the end of the previous year) to obtain the license again, essentially prohibiting any new applicants from receiving said license.[1] Riley was granted a commercial fishing license with lobster, non-quahog shellfish, and non-restricted finfish endorsements. Riley admitted that he had not possessed any commercial fishing licenses since the early 1970s. Additionally, Rule 7 states that there were no new principal effort licenses with quahog or restricted finfish endorsements available in 2003. Riley received the initial denial on February 27, 2003 and on March 9, 2003 timely filed a request for reconsideration with the Commercial Fishing License Review Board.[2]
On May 21, 2003, Riley timely filed a notice of appeal to the Administration Adjudication Division (A.A.D.) requesting a hearing; however, on or about June 6, 2003, the A.A.D. remanded the matter to the Commercial Fishing License Review Board for a hearing, which took place on July 21, 2003. On August 2, 2003, in a letter which stated that Riley had failed to meet the standard set for the in § 20-2.1-2.1(b), Riley was denied at the Commercial Fishing License Review Board as well. On or about August 20, 2003, the D.E.M. gave its final denial to Riley.
On January 21, 2004, the parties presented oral argument before Chief Hearing Officer Kathleen Lanphear, who granted D.E.M.'s motion for summary judgment on January 26, 2004. Riley then filed the instant appeal in this Court, arguing that he has a fundamental right to choose his occupation and, as such, cannot be denied the commercial fishing license, and that the statute violates equal protection and due process principles. He further argued that the Hearing Officer's decision was arbitrary and capricious and finally that the statute and Rule 7 violates the Sherman Act. The Rhode Island Attorney General's Office informed Riley on March 10, 2004 that it would not intervene unless the Court felt such an intervention to brief constitutional issues would be helpful. However, the Attorney General's Office reserved the right to reconsider and intervene upon appeal.[3] A decision is herein rendered.
 STANDARDS OF REVIEW Declaratory Judgment
The Uniform Declaratory Judgments Act (Declaratory Act), G.L. 1956 §9-30-1 et seq., grants the Superior Court "power to declare rights, status, and other legal relations whether or not relief is or could be claimed." The Declaratory Act also provides that the Superior Court may grant additional affirmative relief "based on the declaratory judgment `whenever necessary or proper' provided subsequent `supplementary proceedings' are brought pursuant thereto." Capital Properties, Inc. v.State, 749 A.2d 1069, 1080 (R.I. 1999) (citing §§ 9-30-8, 9-30-12; Sousav. Langlois, 97 R.I. 196, 199, 196 A.2d 838, 841 (1964)). Section 9-30-2
provides in part, that
 "any person . . . whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder."
The purpose of the Declaratory Act is "to facilitate the termination of controversies." Capital Properties,Inc., 749 A.2d at 1080. The decision to issue a declaratory judgment lies within the trial justice's broad discretion. Cruz v. Wausau Ins. Co., 866 A.2d 1237,1240 (R.I. 2005); Sullivan v. Chafee, 703 A.2d 748, 751
(R.I. 1997) (citing Woonsocket Teachers' Guild LocalUnion 951 v. Woonsocket Sch. Comm., 694 A.2d 727, 729
(R.I. 1997)). Section 9-30-12 provides that the Declaratory Act should be "liberally construed and administered." See also Taylor v. Marshall, 119 R.I. 171,180, 376 A.2d 712, 716-17 (1977) (stating existence of alternate methods of relief, including administrative, do not preclude declaratory judgment).
 Administrative Appeal
Judicial review of contested agency decisions is governed by G.L. 1956 § 42-35-15(g) which provides:
 "The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
(3) Made upon unlawful procedure;
(4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
The reviewing court is precluded from substituting its judgment for that of the agency regarding witness credibility or the weight of evidence concerning questions of fact. Costa v. Registry of MotorVehicles, 543 A.2d 1307, 1309 (R.I. 1988); Carmody v. Rhode IslandConflict of Interest Comm'n, 509 A.2d 453, 458 (R.I. 1986). This Court's review is limited to determining whether substantial evidence exists to support the agency's decision. Newport Shipyard v. Rhode Island Comm'nfor Human Rights, 484 A.2d 893 (R.I. 1984). "Substantial evidence . . . means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means an amount more than a scintilla but less than a preponderance." Caswell v. George Sherman Sand Gravel Co., Inc., 424 A.2d 646, 647 (R.I. 1981) (citing Apostolou v.Genovesi, 120 R.I. 501, 508, 388 A.2d 821, 824-25 (1978)). This Court will "reverse factual conclusions of administrative agencies only when they are totally devoid of competent evidentiary support in the record."Milardo v. Coastal Resources Management Council, 434 A.2d 266, 272 (R.I. 1981). In deference to the agency, this Court "must uphold the agency's conclusions when they are supported by any legally competent evidence in the record." Rocha v. State Public Utilities Comm'n, 694 A.2d 722, 725
(R.I. 1997) (quoting Rhode Island Public Telecommunications Authority v.Rhode Island Labor Relations Bd., 650 A.2d 479, 485 (R.I. 1994)).
When an agency promulgates regulations pursuant to specific authority granted by the General Assembly, "the regulations are legislative rules that carry the force and effect of law and enjoy a presumption of validity." Parkway Towers Assoc. v. Godfrey, 688 A.2d 1289, 1293 (R.I. 1997); see also Newport Court Club Assocs. v. Town Council of Town ofMiddletown, 800 A.2d 405, 409 (R.I. 2002) (quoting Rhode IslandDepositors Economic Protection Corp. v. Brown, 659 A.2d 95, 100 (R.I. 1995)). "To determine whether a rule is to be classified as legislative or interpretive, one must consider the power assigned to the administrative agency. If a statute expressly delegates power to interpret and define certain legislation to an agency, regulations promulgated pursuant to that power are legislative rules having the force of law." Lerner v. Gill, 463 A.2d 1352, 1358 (R.I. 1983) (citingBatterton v. Francis, 432 U.S. 416 (1977)); see also In re AdvisoryOpinion to the Governor, 732 A.2d 55, 69 (R.I. 1999). "Legislative rules are valid if they are within the power granted by the General Assembly, are issued pursuant to proper procedure, and are reasonable as a matter of due process." Id. at 1258; see also, Parkway Towers, 688 A.2d at 1293.
If the regulation is challenged on constitutional due process or equal protection grounds and does not infringe upon a fundamental constitutional right or implicates a suspect class, the regulation must be rationally related to furthering a legitimate state interest in order to be upheld.Newport Court Club Assocs., 800 A.2d at 415; Rhode Island DepositorsEconomic Protection Corp. v. Brown, 659 A.2d 95, 100 (R.I. 1995); In reAdvisory Opinion to the House of Representatives, 519 A.2d 578, 583
(1987). Only if a regulation is "without any reasonable basis and . . . purely arbitrary" will it be found unconstitutional under this standard.Rhode Island Depositors Econ. Prot. Corp., 659 A.2d at 100.
 ANALYSIS CONSTITUTIONALITY OF THE STATUTE AND RULE
At the outset, Riley argues that he has a fundamental right to pursue a livelihood, which is protected by his right to life, liberty, and property under the Equal Protection and Due Process Clauses of the Fifth
and Fourteenth Amendments to the United States Constitution. Riley further posits that even if no fundamental right to pursue a livelihood exists, he would still prevail constitutionally under a rational basis test on the grounds that the statute has irrationally created two classes: those with licenses as of December 31, 2002, and those without licenses as of that date. Riley alleges that treating similarly situated citizens differently in this allegedly arbitrary manner violates equal protection and due process rights. Riley also maintains that § 20-2.1-5 is unconstitutional because it violates the state police powers. Riley also contends that § 20-2.1-5 and Rule 7 exceed the enabling statute's (G.L. 1956 § 20-3-2) authority.
D.E.M. responds by arguing that § 20-2.1-1 et. seq. and Rule 7 are constitutional because legislative provisions enjoy a presumption of validity and the Appellant must prove unconstitutionality beyond a reasonable doubt, which he has not done. D.E.M. notes that the General Assembly has plenary power to regulate the fishing industry. D.E.M. also argues that the statute and rule do not violate equal protection because not all legislative classifications (in this case license and non-license holders) are constitutionally impermissible. D.E.M. contends that no fundamental right is involved and therefore, minimal scrutiny must be applied, under which the statute and rule withstand constitutional attack. Additionally, D.E.M. maintains that the statute neither violates substantive due process rights because regulation of commercial fishing licenses is not the type of state action that "shocks the conscience," nor has Appellant shown that a fundamental right been violated. Lastly, D.E.M. opines that the basis of Riley's present action is merely his desire to fish the seafood stock that fetches higher market prices, when in actuality, he received a license to fish for other species and categories, just not those that bring the highest prices.
Recently the Rhode Island Supreme Court examined constitutional issues involving fishing statutes in Cherenzia v. Lynch, 847 A.2d 818 (R.I. 2004). In Cherenzia, a group of commercial fishermen argued that a statute barring use of SCUBA gear to harvest shellfish from four coastal ponds violated their substantive due process and equal protection rights.Id. at 820. The fishermen argued the statute violated their fundamental rights of fishery and discriminated against a single class of fishermen — those who use SCUBA gear — and as such, strict scrutiny applied. Id. at 821-22. The State argued that the statute enjoyed a presumption of validity, the General Assembly had plenary power to regulate the fishing industry, and no fundamental right was implicated; thus only minimal scrutiny need be applied. Id. at 822.
Our Supreme Court held that the provisions of the statute in question that prohibited use of SCUBA gear in harvesting shellfish did not "infringe on a fundamental constitutional right, nor [did] they create a suspect classification." Cherenzia, 847 A.2d at 823. The Supreme Court stated that the "scope of the fundamental right protected in art. I, sec. 17, is that all the inhabitants of the state `shall continue to enjoy and freely exercise' equal access to the state's fishery resources." Id. "This `gives the benefits of fishery to all the people in equal measure.'" Id. (quoting Opinion of the Senate, 87 R.I. at 38,137 A.2d at 525-26). The Supreme Court concluded that "the very nature and scope of the right to fish that art. I, sec. 17 protects is not unqualified; rather, it anticipates that reasonable legislative regulation is necessary to properly effectuate that right." Id. at 824 (referencing State v. Cozzens, 2 R.I. 561, 563 (1850)). "If a statute or regulation contained restrictions that infringed upon the fundamental right of the inhabitants of the state to have equal access to the "rights of fishery," then such a regulation or law would be subject to strict-scrutiny analysis." Id. (Emphasis added.) The Court also noted that such fishing was "not merely for the profit and emolument of the fishermen engaged in the business." Id. (quoting Opinion to the Senate,87 R.I. 37, 38-39, 137 A.2d 525, 526 (1958)). In addressing the substantive due process claim, our Supreme Court held that "the burden was on [the plaintiffs] to prove beyond a reasonable doubt that the provisions of [the statute] lacked a substantial relation to the public health, safety, and welfare, or to the Legislature's constitutionally prescribed duty to protect and conserve the fishery resources of the state." Id. at 826 (citing Brunelle v. Town of South Kingstown,700 A.2d 1075, 1084 (R.I. 1997)). The Court found there was no violation of equal protection or due process rights and the statute was constitutional. Id. at 826-27.
Our Supreme Court has further recognized that "[w]ithin the constitution's broad grant of legislative power to the General Assembly lies its plenary power to regulate the fishing resources of the state."Id. at 822 (citing Opinion to the Senate, 87 R.I. 37, 40, 137 A.2d 525, 526
(1958) and other cases). Furthermore, it noted that "`the whole subject of fisheries . . . [is] under the fostering care of the General Assembly.'" Id. (citing State v. Kofines, 33 R.I. 211, 239, 80 A.2d 432,443 (1911)). With regard to the fisherman's claim of equal protection violations because of the alleged discrimination against the "class" of fisherman using SCUBA gear, the Court clarified that "[n]ot all legislative classifications, however, are impermissible." Id. at 823 (citing Kennedy v. State, 654 A.2d 708, 712 (R.I. 1995)). The Court reiterated that "the Legislature enjoys "a wide scope of discretion in enacting laws that affect some classes of citizens differently from others." Id. (quoting Boucher v. Sayeed, 459 A.2d 87, 91 (R.I. 1983)). Strict scrutiny applies when a fundamental right has been impinged upon, or a suspect classification arises. Id. Our Supreme Court, "will employ a `minimal-scrutiny' analysis, however, when assessing economic or social regulations that neither infringe on a fundamental right, nor result in a classification that is `suspect.'"[4] Id. (referencing Kennedy,654 A.2d at 712). The Court also recognized that the United States Supreme Court has held that "the scope of the liberty interests protected by the Fourteenth Amendment" includes "the right of the individual to engage in the common occupations of life, and `generally to enjoy those privileges long recognized . . . as essential to the orderly pursuit of happiness by free men.'" Id. (citing Lynch v. Gontarz, 120 R.I. 149, 156,386 A.2d 184, 188 (1978)).
In the case at bar, Riley's fundamental "rights of fishery" have not been violated because he was granted a commercial license and maintains the right to fish recreationally.[5] The Cherenzia case expressly held that said fundamental rights of fishery deal with equal access to the fish resources, subject however, to reasonable state regulation.847 A.2d at 824. The power to regulate the rights of fishery is, therefore, derived directly from the Rhode Island Constitution, not merely from a legislative enactment, and such constitutional authorizations are subject to an unquestionably strong and favorable presumption.[6] It is well settled that the General Assembly has plenary power to regulate fisheries as dictated by the Rhode Island Constitution in Article 1, Section 17. Id. at 822-23. Additionally, § 20-2.1-1
provides that the General Assembly has "plenary authority and responsibility . . . to provide for the conservation of natural resources of the state, including its marine fisheries." In this matter, the D.E.M. cited the need to regulate and preserve the fish populations while not shortening the season or causing "overcrowding" in the fishing industry.[7] Though Riley argues that the fish populations are not in danger of being depleted, this belief is not the deciding factor. The General Assembly has plenary power to regulate the fisheries and as such, can reasonably regulate the number of commercial fishing licenses.
Section 20-2.1-1 sets forth the General Assembly's findings which include a need to make the "statutes and programs for marine fisheries management and licensure . . . adaptable to changing conditions and circumstances." Section 20-2.1-1(7). The purpose of the statute need only be legitimate, such that even if the fish populations were abundant, it would still be legitimate for the General Assembly to regulate the licensure and entry into the fishing industry.[8] The fundamental purpose of the system of licensure adopted is to "preserve, enhance, and allow for any necessary regeneration of the fisheries of the state, for the benefit of the people of the state, as an ecological asset and as a source of food and recreation." Section 20-2.1-2 (outlining numerous legislative purposes). As such, the regulation of fishing resources need only be reasonably related to a legitimate governmental purpose under the rational basis test, which presumptively favors the constitutionality of the statute.[9] Cherenzia, 847 A.2d at 825 (citing Kennedy v. State,654 A.2d 708, 712-13 (R.I. 1995)).
With respect to the subject regulation, Riley attempts to trigger strict scrutiny thereof, by alleging a violation of his fundamental right to engage in the occupation of his choosing. However, he has not presented to this Court any compelling case law that recognizes such a fundamental right. Our Supreme Court has acknowledged that the liberty interest protected by the Fourteenth Amendment includes "the right of the individual to engage in the common occupations of life. . . ."847 A.2d at 823 (quoting Lynch v. Gontarz, 120 R.I. 149, 156, 386 A.2d 184,188 (1978)). Even if one were to consider fishing a "common occupation," it would be of little significance because Riley was granted a commercial fishing license, albeit a basic one. Our Supreme Court "has recognized that the constitutional guarantee of a . . . free fishery . . . gives no peculiar rights to those resorting to it for commercial purposes." Opinionto the Senate, 87 R.I. 37, 38, 137 A.2d 525, 526 (1958). Riley was not prevented from entering the field of commercial fishermen, but rather was simply denied an expanded license that allowed him to fish for certain types of fish, which may be more profitable. Preventing a person from obtaining a commercial fishing license to catch the fish with the highest market value simply does not violate that person's constitutionally protected rights. "A license is in the nature of a privilege . . . entitling the licensee to do something that he would not be entitled to do without the license." 51 Am. Jur. 2d Licenses Permits § 1 (2000). "The right of personal liberty and the right to earn a livelihood in any lawful calling and to pursue any lawful trade or vocation is subject to the governmental right to require a license where justified under the police power." 51 Am. Jur. 2d Licenses Permits § 16 (2000). Additionally, "[a] classification based on the possession of a sporting license does not burden a suspect group or a fundamental right and is, therefore, subject to review under the rational basis standard." AnimalLegal Defense Fund, Inc. v. Fisheries Wildlife Bd., 624 N.E.2d 556, 560
(Mass. 1993). As such, Riley's right to engage in the common occupations of life has not been infringed upon, and the standard of review remains a rational basis.
Article 1, Section 17 of the Rhode Island Constitution grants people the freedom to "exercise all the rights of fishery" but simultaneously grants the government the police power to regulate and control the natural resources "for the preservation, regeneration, and restoration of the natural environment." R.I. Const. art. 1, sec. 17. Indeed, said section states that "it shall be the duty of the general assembly to provide for the conservation of the air, land, water, plant, animal, mineral and other natural resources of the state, and to adopt all means necessary and proper by law." Id. Nothing in the Rhode Island Constitution grants the people a fundamental right to commercial fishing licenses. The Cherenzia case affirms that the fundamental rights to the fishery exist, but they are not unfettered or unrestricted.847 A.2d at 824.
Section 20-2.1-5(3) provides for new licenses such that, in order to obtain the multipurpose or principal effort license that Riley sought, a person should first have the basic license for two years. This statute does not make the two year prerequisite recommendation a requirement, but priority is given to those basic license holders. In addition, § 20-2.1-5(3) states that adding new licensees to the total number of licensees is permissible "consistent with the management plan for issuance effective January 1 . . . based on status of resource and economic condition of fishery." Section 20-2.1-5(3)(iii). Riley received a basic license, and perhaps after 2 years, he will be granted a license with greater privileges. Indeed, D.E.M. does issue principal effort licenses to new entrants after old licenses are traded in or retired.[10] Even if the D.E.M. decided not to issue additional new permits, instead choosing to preserve the status quo insofar as the number of permits issued, then such an action is permitted under the police power statute and presumed valid.
Appellant argues that the statutory ban on issuing new licenses is unconstitutional. Such a prohibition on the issuance of new licenses under G.L. 1956 § 20-2.1-5 and Rule 7 amounts to what is essentially a moratorium on new principal effort and multi-purpose fishing licenses. Neither the statute nor the rule specifically states when such a moratorium would end, but rather, as drafted could prohibit new license applicants from entering the industry indefinitely. Recently, the Rhode Island Supreme Court held that a three year moratorium that prevented a company from entering the high speed ferry business was valid under the relevant statute granting regulatory power to the agency. InterstateNavigation Co. v. Div. of Pub. Utils. and Carriers of the State of RhodeIsland, 824 A.2d 1282 (R.I. 2003). The United States Supreme Court has also examined moratoriums in Tahoe-Sierra Pres. Council, Inc. v. TahoeReg'l Planning Agency, 535 U.S. 302 (2002). In Tahoe-Sierra, the U.S. Supreme Court stated "[i]t may be true that any moratorium that lasts for more than one year should be viewed with special skepticism."535 U.S. at 341. However, the Court also said that it "could not possibly conclude that every delay of over one year is constitutionally unacceptable." Id. at 341-42 (acknowledging some moratoria last more than one year which interfere with expectations). In fact, "[m]oratoriums have been approved when they form a part of a comprehensive plan to remedy a problem situation." Q.C. Constr. Co., Inc. v. Gallo, 649 F. Supp. 1331,1337 (D.R.I. 1986) (citing numerous cases).
In this case, while the moratorium on new principal effort licenses may be able to last indefinitely, there are mechanisms to amend or reevaluate such a ban with respect to its relation to a comprehensive regulatory scheme. See id. (stating moratoriums valid when part of plan to remedy problems); see also Westwood Forest Estates, Inc. v. Village of So.Nyack, 244 N.E.2d 700, 702 (N.Y. 1969) (holding zoning moratorium on new construction improper where not in furtherance of comprehensive plan). Section 20-3-1 creates the Marine Fisheries Council (Council), on which eight private citizens sit, after being appointed by the governor with the advice and consent of the senate.[11] G.L. 1956 § 20-3-1. The Council "shall serve in an advisory capacity only to the state and agencies of the state regarding marine fisheries issues and to the director of the department of environmental management . . . for the planning, management, and regulation of marine fisheries. . . ." Section20-3-2. "The [C]ouncil shall advise the director on the development of the regulatory agenda for marine fisheries and shall have the power to initiate rule making by petition as provided for in § 42-35-6."[12]
Section 20-2.1-10 (providing powers and duties of Council with regard to licensure). Annually, the Council must report to the governor and various members of the legislature "[a]ny recommendations it may have for maintaining, improving, or changing laws, regulations, or management programs for marine fisheries."[13] Section 20-3-2(b). In this way, the Council serves as an oversight committee, which can be petitioned by any interested party, presumably including someone similarly situated to Riley. Because of the existence of the Council, a mechanism exists by which private citizens can affect changes to D.E.M. policies and rules, and the ban on new licenses does not necessarily and explicitly endure in perpetuity.
Additionally, though the moratorium on new licenses may not be the best possible method of reaching the D.E.M.'s stated goals, under a rational basis review, it need not be. In fact, "[t]o satisfy the rational basis test, the challenged regulation need not be `the best means of promoting a legitimate government interest.'" Medeiros v. Atlantic States MarineFisheries Comm'n, 327 F. Supp. 2d 145, 151 (D.R.I. 2004) (quoting NewYork State Trawlers Ass'n v. Jorling, 16 F.3d 1303, 1309 (2d Cir. 1994)) (emphasis in original). "`[A] legislative choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data.'" Id. (quoting F.C.C. v. BeachCommunications, Inc., 508 U.S. 307, 314 (1993)). "Moreover, the challenged regulation need not be the least burdensome or the most effective means of accomplishing the regulatory goal." Id. (citingStarlight Sugar, Inc. v. Soto, 253 F.3d 137, 146 (1st Cir. 2001)). In fact, "issues as to the degree, if any, that the limitations will in fact benefit fishery preservation are not relevant" to a constitutional analysis. Id. at 152. In this case, the ban on new licenses in § 20-2.1-5
and Rule 7 may not be the best or most effective method of achieving D.E.M.'s objectives as part of its comprehensive regulatory plan for the various fisheries. Still, it is nonetheless permissible because it is reasonable and rationally related to the government's legitimate purpose of regulating Rhode Island's natural fish resources.[14]
Riley carries the burden of proving the statute and rule are unconstitutional beyond a reasonable doubt, and has failed to do so. Additionally, Riley has not persuaded this Court that either a fundamental right or a suspect class is involved. Thus, Riley's arguments fail to trigger heightened constitutional scrutiny. Additionally, the legislative classifications are permissible, and in this case, the regulation of the number of fisherman with permits is reasonable in accomplishing stated goals explicitly set forth in the statute, G.L. 1956 § 20-2.1-2. Accordingly, this Court declares that the General Assembly has the power to regulate in this area and in this manner.
 VIOLATION OF THE SHERMAN ACT
Riley further argues that said statute and Rule 7 are preempted by antitrust laws and § 1 of the Sherman Act as a restraint on trade. Riley asserts that D.E.M. has created a monopoly in the existing licensees, which violates the Sherman Act. D.E.M. argues that the statute and rule are not preempted by antitrust laws and § 1 of the Sherman Act because the statute and rule were established pursuant to a valid grant of legislative power, which exempts them from the Sherman Act.
At the outset, Riley has presented no case law to override D.E.M's cited authority as to applicability, instead relying on the arguments of how the D.E.M.'s actions allegedly violate the Act by essentially creating a monopoly in the fishing industry with respect to certain finfish licenses. On the other hand, D.E.M. persuasively asserts the inapplicability of the Sherman Act based on the United States Supreme Court's decision in Parker v. Brown, 317 U.S. 341 (1943) and the Rhode Island Federal District Court's decision in Healey v. Bendick, et al.,628 F. Supp. 681 (D.R.I. 1986).
In Parker, the United States Supreme Court held that the Sherman Act made "no mention of the state as such, and [gave] no hint that it was intended to restrain state action or official action directed by a state." 317 U.S. at 351. The Court continued, stating the Sherman Act's "purpose was to suppress combinations to restrain competition and attempts to monopolize by individuals and corporations, [which] abundantly appears from its legislative history." Id. The Court also noted, in the alternative, that there was "no question [that] the state or its municipality becoming a participant in a private agreement or combination by others for restraint of trade" violates the Sherman Act. Id. at 351-52 (referencing Union Pacific R. Co. v. United States, 313 U.S. 450
(1941)). The Supreme Court concluded that "[t]he state in adopting and enforcing the program made no contract or agreement and entered into no conspiracy in restraint of trade or to establish monopoly but, as sovereign, imposed the restrain as an act of government which the Sherman Act did not undertake to prohibit." Id. at 352 (citing Olsen v. Smith,195 U.S. 332, 344-45 (1904)).
In Healey, the Rhode Island Federal District Court followed the same reasoning of the Parker case. The Healey case involved the Rhode Island Marine Fisheries Council (M.F.C.). 628 F. Supp. at 681. The court stated that "[i]nasmuch as the MFC's edicts were within the sphere of the authority delegated to that body by the Rhode Island General Assembly, the conduct that [plaintiff] castigates was undeniably the conduct of the state itself, and therefore immune from Sherman Act charges under the "state action" principle of Parker." Id. at 688. The court went on to say:
 "The Sherman Act serves a salutary purpose in ensuring that the marketplace remain reasonably free and open, and in preventing combinations within the private sector from abridging that fundamental freedom in impermissible ways. But, states themselves have historically been accorded safe harbor in these stormy seas. Congress never intended that the Act be employed to handcuff state governments in the pursuit of their traditional regulatory functions. Both the basic tenets of federalism and the compelling force of precedent require that [plaintiff's] Sherman Act claim, which is brought solely against state actors, be dismissed." Id. at 689.
Additionally, the Sherman Act's Rhode Island state law counterpart can be found at G.L. 1956 § 6-36-1 et seq. Section 6-36-8 provides an exemption for state action, stating that "[n]othing contained in this chapter shall be construed to apply to activities or arrangements approved by any regulatory body or officer acting under statutory authority of this state or of the United States." The statute also provides that "[t]he exemptions shall be liberally construed in harmony with federal statutes and ruling judicial interpretations of the United States courts. . . ." Section 6-36-8. The D.E.M. is a regulatory agency that exists by legislative grant of power, and, as such, its actions in regulating the fishing industry are presumed valid and exempt from attack under antitrust law. Thus, this Court declares that Riley's claim that D.E.M violated antitrust laws and the Sherman Act fails.
 D.E.M.'S DECISION
With respect to the administrative appeal, Riley alleges that Hearing Officer's decision was not supported by substantial evidence and therefore fails to meet the standard required by G.L. 1956 § 42-35-15(g) and applicable case precedent. Newport Shipyard v. Rhode Island Comm'nfor Human Rights, 484 A.2d 893 (R.I. 1984) (limiting court's review to determination of whether substantial evidence exists to support agency decision). Riley further argues that the hearing officer erred in granting summary judgment because discovery had not yet been completed. The D.E.M. counters that the Hearing Officer took all evidence into consideration, weighing both sides, and arrived at a conclusion, which it believes was correct. Additionally, D.E.M. contends that summary judgment before the hearing officer was appropriate because Riley was not statutorily eligible for a license and, as such, there could be no factual dispute.
The Chief Hearing Officer provided a written order/opinion that discussed the analysis she employed to reach her decision, upholding the denial of the license.[15] Here, this Court is satisfied that the Hearing Officer, based her denial on substantial evidence. The Hearing Officer made several findings of fact in reaching her decision, including the following:
 "1. The Applicant, Steven J. Riley, did not possess a commercial fishing license as of December 31, 2002.
 2. On February 21, 2003 Steven J. Riley applied for a commercial fishing license (Principal Effort License) with quahog and restricted finfish endorsements.
 3. The Office of Boat Registration and Licensing issued a final denial by letter dated August 20, 2003.
 4. Applicant filed an appeal with the Administrative Adjudication Division on September 16, 2003." (Lanphear Decision at 7).
Additionally, the Hearing Officer made several conclusions of law prior to granting summary judgment in favor of D.E.M. including the following:
 1. The Administrative Adjudication Division for Environmental Matters ("AAD") has jurisdiction over this matter pursuant to R.I. GEN. LAWS § 42-17.7-2; R.I. GEN. LAWS § 20-2.1-12(c); and Rule 6.7-10(i) of the Rules and Regulations Governing the Management of Marine Fisheries.
 2. The license sought by Applicant constitutes a new license as contemplated by R.I. GEN. LAWS § 20-2.1-5
(1)(ii) and the Rules and Regulations Governing the Management of Marine Fisheries.
 3. Rule 7.2 of the Rules and Regulations Governing the Management of Marine Fisheries prohibits the issuance of new Principal Effort Licenses (including licenses with quahog and non-restricted finfish endorsements) for 2003.
 4. Rule 7.2 of the Rules and Regulations Governing the Management of Marine Fisheries is consistent with R.I. GEN. LAWS § 20-2.1-5 (1)(ii) and furthers the statutory scheme and purposes of the statute.
 5. Pursuant to R.I. GEN. LAWS § 20-2.1-5(1)(ii) Applicant is not eligible for a principal effort license with quahog and non-restricted finfish endorsements.
 6. There is no dispute as to any genuine issue of material fact and the Office of Management Services is entitled to judgment as a matter of law." (Lanphear Decision at 7-8).
The Hearing Officer also cited to two previous administrative decisions that denied fishing licenses in the same manner, basing the decision on the applicant's lack of a license prior to the date that the ban went into effect under G.L. § 20-2.1-5(1)(ii). The record evidences that Riley was not even eligible, ab initio,
to obtain a license with the endorsements that he sought. As such, this Court finds that the Hearing Officer's denial of said license was consistent with constitutional and statutory provisions, was not arbitrary or capricious or affected by error of law, and was supported by reliable, probative, and substantial evidence. Additionally, since there were no material facts in dispute her grant of summary judgment was correct.
 CONCLUSION
Riley has not met his burden of demonstrating that his rights of due process and equal protection have been violated. This Court finds that both G.L. 1956 § 20-2.1-5
and Rule 7 are constitutional because they are rationally related to the legitimate government purpose in protecting the welfare of the public and promoting conservation of natural fish resources through license limitations. Furthermore, antitrust laws, including the Sherman Act, do not apply to regulatory agencies, such as the D.E.M., on the facts of this case, due to a statutory exemption and valid precedent. For the reasons stated above, this Court finds that the police powers of the State and the plenary powers of the General Assembly to regulate the fisheries are determinative in this case. Additionally, substantial rights of the Appellant have not been prejudiced. The Hearing Officer's decision was based on reliable, probative, and substantial evidence, in accordance with constitutional and statutory provisions, and was not arbitrary or capricious or affected by error of law. Thus, this Court hereby denies the declaratory relief prayed for by the Appellant and affirms the decision of the D.E.M Hearing Officer.
Counsel shall submit an appropriate order consistent with this opinion.
[1] Section 20-2.1-5(1)(ii) provides that "[d]uly licensed persons in a fishery as of December 31 of the immediately preceding year, shall be eligible to obtain a principal effort license for the fishery sector for which they were licensed on December 31 of the immediately preceding year, which principal effort license shall allow its holder to fish in a fishery sector at the full harvest and gear levels."
[2] Prior to receiving any decision of the Commercial Fishing License Review Board, Riley was notified on April 22, 2003 that said Review Board had not yet been fully appointed. Riley asserts that the Board had, in fact, been appointed on April 16, 2003.
[3] This Court notes that the opinion of the Attorney General is not needed based on this Court's decision herein.
[4] Other jurisdictions have held that regulations involving commercial fishing are properly reviewed under rational basis scrutiny. "Fishing, whether commercial or recreational, is not a fundamental right and those engaged in these activities are not a suspect class."Vickers v. Egbert, 2005 U.S. Dist. LEXIS 3333, *10-12 (S.D. Fla. 2005) (citing Sisk v. Texas Parks WildlifeDep't, 644 F.2d 1056, 1058 n. 5 (5th Cir. 1981); UnitedBoatmen of NJ v. Mosbacher, 1992 U.S. Dist. LEXIS 664, *26-27 (D.N.J. 1992); LaBauve v. Louisiana Wildlife Fisheries Comm'n, 444 F. Supp. 1370, 1382 (E.D. La. 1978); Gilbert v. Dep't of Fish Game, Bd. ofFisheries, 803 P.2d 391, 399 (Ak. 1990); CaliforniaGillnetters Ass'n v. Dep't of Fish Game,39 Cal. App. 4th 1145, 1154-55, 46 Cal. Rptr. 2d 338,343 (Cal.Ct.App. 1995); Lane v. Chiles, 698 So. 2d 260,263 (Fla. 1997); State v. Weaver, 805 So. 2d 166, 170
(La. 2002)).
[5] Under the Rhode Island Constitution, art. 1, sec.17, "the rights of fishery, and the privileges of the shore . . . includ[e] but [are] not limited to fishing from the shore, the gathering of seaweed, leaving the shore to swim in the sea and passage along the shore." Black's Law Dictionary defines the "right of fishery" as "[t]he general and common right of the citizens to take fish from public waters, such as the sea, great lakes, etc. Shively v. Bowlby, 152 U.S. 1, 14 S.Ct. 548,38 L.Ed. 331. Such rights are restricted however, by federal and state laws that establish fishing seasons, licensing requirements, catch limits, etc." Black's Law Dictionary 637 (6th ed. 1990).
[6] The Rhode Island Constitution provides that:
 "it shall be the duty of the general assembly to provide for the conservation of the air, land, water, plant, animal, mineral and other natural resources of the state, and to adopt all means necessary and proper by law to protect the natural environment of the people of the state by providing adequate resource planning for the control and regulation of the use of the natural resources of the state and for the preservation, regeneration and restoration of the natural environment of the state." R.I. Const. art. 1, sec. 17.
[7] This Court agrees that a shortened fishing season would be problematic both for the commercial fishing industry and the economy in Rhode Island. Without comprehensive regulation of the fishing industry through licensing, etc. the number of parties fishing would likely increase and catch quotas would be met sooner, resulting in a significantly abbreviated fishing season. Though Appellant argues the fishing industry could regulate itself, the reality of a "Tragedy of the Commons" type instructs us otherwise. Too many participants lead to premature depletion of the resource, in this case, fish and shellfish species.
[8] Section 20-2.1-13 states that the provisions of the licensing statute are "necessary for the welfare of the state and its inhabitants, [and] shall be construed liberally so as to effectuate its purposes."
[9] "Social and economic legislation . . . that does not employ suspect classifications or impinge on fundamental rights must be upheld . . . when the legislative means are rationally related to a legitimate governmental purpose." Hodel v. Indiana, 452 U.S. 314, 331 (1981) citedin Medeiros v. Atlantic States Marine Fisheries Comm'n,327 F. Supp. 2d 145, 151 (D.R.I. 2004). "Under the rational basis test, the challenged regulation is afforded a `strong presumption of validity.'" Medeiros, 327 F. Supp. 2d at 151 (quoting F.C.C. v. BeachCommunications, Inc., 508 U.S. 307, 314 (1993)). "The rational basis test is satisfied `if any reasonably conceivable set of facts could establish a rational relationship between [the challenged regulation] and the government's legitimate ends.'" Id. (citing Montalvo-Huertas v.Rivera-Cruz, 885 F.2d 971, 978 (1st Cir. 1989)).
[10] At oral argument, D.E.M. stated that thirteen licenses were issued to new entrants consistent with established priority methodology and D.E.M.'s exit/entrance procedures. See G.L. 1956 § 20-2.1-5(3); see also
G.L. 1956 § 20-2.1-9(4) (setting forth matters considered in establishing license programs under statute).
[11] The Council is chaired by the director of the D.E.M. or whomever the director may designate. G.L. 1956 § 20-3.1. The eight private citizen members of the Council "shall be chosen from among those with skill, knowledge, and experience in the commercial fishing industry, the sportfishing industry, and in the conservation and management of fisheries resources. . . ." Id.
[12] Section 42-35-6 of the Rhode Island General Laws provides that "[a]ny interested person may petition an agency requesting the promulgation, amendment, or repeal of any rule." In this way, any interested person could petition the Council with a challenge or amendment to Rule 7.
[13] Additionally, the Council is required to report annually to the governor, speaker of the house, president of the senate and other legislative members with regard to the advice it gave to state agencies, the response it received to the advice it gave, and any findings it has with regard to the status of the fisheries. Section 20-3-2(b).
[14] "There is no dispute that the conservation of coastal fishery resources is a legitimate governmental objective." Medeiros,327 F. Supp. 2d at 151 (citing New York State Trawlers Ass'n v.Jorling, 16 F.3d 1303, 1309 (2d Cir. 1994)). Section 20-2.1-2 explicitly provides for "restrictions on the number of license holders" as a valid principle for adaptive fisheries management. For findings of the General Assembly and other purposes of the statute in regulating commercial fishing licensure see G.L. 1956 § 20-2.1-1 and G.L. 1956 § 20-2.1-2. It is also noteworthy that the General Assembly enacted a moratorium on commercial fishing licenses from 1995 until 1998 and again from 2000 until 2003, during both of which, only renewal licenses were available.
[15] The Hearing Officer's authority prohibited her from addressing the constitutional issues raised by the Appellant.